MARY ANN McNETT MASON (SBN 115089)
County Counsel
D. CAMERON BAKER (SBN 154432)
JASON W. MAUCK (SBN 255133)
Deputy County Counsel
COUNTY OF CONTRA COSTA
1025 Escobar Street, Third Floor
Martinez, California 94553
Telephone:   (925) 655-2280
Facsimile:    (925) 655-2266
Electronic Mail: cameron.baker@cc.cccounty.us

Attorneys for Defendant ANDREW HALL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNIE ATIENZA, individually and as successor-in-interest to Decedent LAUDEMER ARBOLEDA;<br><br>Plaintiff,<br><br>v.<br><br>ANDREW HALL, individually; PHILLIP ARBOLEDA, individually, as successor-in-interest to Decedent LAUDEMER ARBOLEDA, and DOES 1-50 inclusive,<br><br>Defendants. | No. C19-03440 RS<br><br>DEFENDANT ANDREW HALL'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>Date:   July 29, 2021<br>Time:   1:30 p.m.<br>Crtrm:  3, 17th Floor<br>Judge:  Hon. Richard Seeborg, Presiding<br>Date Action Filed: June 17, 2019<br>Trial Date:   December 6, 2021 |

TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. Atienza's Factual Assertions Lack Evidentiary Support. . . . . . . . . . . . . . . . . . . . . . . 5

        1. Hall Reasonably Feared Arboleda Would Run Him Over.. . . . . . . . . . . . . . . . 5

        2. The Civic's Average Speed was 14 mph and It was Accelerating Towards Hall Prior to the Shooting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3. Arboleda's Ability to Chose His Path of Travel. . . . . . . . . . . . . . . . . . . . . . . . 7

        4. Hall Did Not Know Arboleda Would Drive into the Gap.. . . . . . . . . . . . . . . . 7

        5. Hall's Location While Shooting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B. Hall did not Violate Arboleda's Fourth Amendment Rights. . . . . . . . . . . . . . . . . . . . 8

        1. The Objective Evidence Establishes Arboleda Posed an Imminent Threat of Serious Harm to Hall and Others.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2. Arboleda Posed a Risk of Serious Crimes. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3. Arboleda Was Actively Resisting Arrest and Attempting to Evade Capture. . 10

        4. Other Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C. Hall Should Be Given Qualified Immunity as to the Fourth Amendment Claim. . . . 10

    D. Summary Judgment is Appropriate on Atienza's Fourteenth Amendment Claim. . . 12

    E. Summary Judgment is Appropriate on the State Law Claims. . . . . . . . . . . . . . . . . . 13

        1. Wrongful Death Negligence Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2. The Bane Act Claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        3. The Assault Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    F. Summary Judgment Should Be Granted as to the Claims for Wrongful Death Damages and Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

Cases

*Alliance for Educ., Inc. v. Airborne Wireless Network Inc.,* 2018 U.S. Dist LEXIS 223032 (C.D. Cal. December 17, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brosseau v. Hagen,* 543 U.S. 194 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Craig v. Cty. of Santa Clara,* 2018 U.S. Dist. LEXIS 134817 (N.D. Cal. August 9, 2018). . . . . . . . 15

*Elliot v. Leavitt,* 99 F.3d 640 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gonzalez v. City of Anaheim,* 747 F.3d 789 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Hayes v. Cty. of San Diego,* 57 Cal. 4th 622 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*J.A.L. v. Santos,* 724 Fed. Appx. 531 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 13

*Martinez v. Cty. of L.A.,* 47 Cal. App. 4th 334 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mendez v. Cty. of L.A.,* 897 F.3d 1067 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Monzon v. City of Murrieta,* 978 F.3d 1150 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10, 12

*Mullenix v. Luna,* 577 U.S. 7 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nelson v. City of Davis,* 685 F.3d 867 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nieto v. City and County of San Francisco,* 2015 U.S. Dist. LEXIS 154733 (N.D. Cal. November 16, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nunez v. City of San Jose,* 381 F. Supp. 3d 1192 (N.D. Cal. 2019). . . . . . . . . . . . . . . . . . . . . . . . 13

*Orn v. City of Tacoma,* 949 F.3d 1167 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Plumhoff v. Rickard,* 572 U.S. 765 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ramirez v. Ghilotti Bros.,* 941 F. Supp. 2d 1197 (N.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . 8, 13

*S.B. v. Cnty. of San Diego,* 864 F.3d 1010 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Scott v. Harris,* 550 U.S. 372 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Tennessee v. Garner,* 471 U.S. 1 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Tyler v. Travelers Commer. Ins. Co.,* 499 F. Supp. 3d 693 (N.D. Cal. 2020). . . . . . . . . . . . . . . 8, 13

*Villanueva v. California,* 986 F.3d 1158 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Zion v. Cty. of Orange,* 874 F.3d 1072 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Statutes & Rules

California Penal Code Section 196. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

California Penal Code Section 245(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Penal Code Section 835a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Federal Rule of Civil Procedure 56(c)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.        INTRODUCTION

This case arises from the November 3, 2018 shooting of Plaintiff Jeannie Atienza's son, Laudemer Arboleda, by defendant Deputy Andrew Hall.  The video evidence of the incident establishes that Arboleda's Civic posed an immediate risk of serious harm to Hall prior to the time Hall started shooting and thereafter.  Accordingly, Hall's use of deadly force was reasonable under both federal and state law and summary judgment should be granted as to all claims in this action.

The incident, which lasted roughly seven seconds, was chaotic and fluid, involving Hall, Arboleda, and a third officer, Sergeant Chris Martin.  Four seconds into the incident (just after Martin parked his SUV at a critical spot), Hall suddenly found himself between his vehicle and Martin's SUV with the Civic, its front wheels pointed directly at him, accelerating towards him.  He had no obvious means of evading the Civic and very little time to evaluate and react.  The photo below shows what Hall saw when he commenced shooting roughly a second later.[1]  Significantly, Arboleda did not have to drive into that gap and he could have stopped prior to Hall's shooting.



---

[1] This still image from Hall's Body Worn Camera ("BWC") was taken 5.072 seconds after the start of the incident.  *See* Report of Jason Alexander, ECF No. 94-1, Figure 32 at 20.

Defendant Andrew Hall's Reply Brief in Support of Motion for Summary Judgment - Case No. C19-03440 RS
1

1    The video evidence of the incident and other evidence establishes Hall's use of deadly force
2 was reasonable under the Fourth Amendment and state law.  Atienza has no real basis to dispute this
3 point and concedes, as she must, critical facts including the following:  1) Hall did not know the Civic
4 was moving until he came around the back of his patrol vehicle; 2) Hall was directly in the Civic's
5 path of travel for more than a second during which he was trapped between the two patrol vehicles; 3)
6 Hall had very little time to react to the threat posed by the Civic; and 4) Arboleda could have stopped
7 prior to the shooting.  These conceded facts alone warrant summary judgment for Hall on all claims.

8    Atienza also concedes, as she must, many of Hall's legal arguments, including the following:
9 1) Arboleda's willingness to injure Hall justified Hall's continued use of deadly force under *Tennessee*
10 *v. Garner,* 471 U.S. 1 (1985), and its progeny; 2) Hall's pre-shooting tactics were consistent with his
11 POST training and not negligent; 3) Arboleda's conduct, including continuing to drive the Civic
12 towards Hall, was an intervening cause and, thus, Hall's pre-shooting conduct, even if negligent, was
13 not the proximate cause of Arboleda's death; and 4) because there was only one fatal shot and it
14 cannot be determined where Hall was at the time, if the Court determines that any of Hall's shots were
15 justified, Atienza cannot recover wrongful death damages.

16   Significantly, where Atienza does attempt to dispute facts, she mischaracterizes the actual
17 evidence.  For example, Atienza repeatedly asserts that Hall did not believe Arboleda was attempting
18 to run Hall over or posed a threat to Hall.  *See, e.g.,* Plaintiff Jeannie Atienza's Opposition to
19 Defendants' [sic] Motion for Summary Judgment ("Opp. Brief"), ECF No. 100, at 1:19-20, 10:8, 12:9-
20 10, 18:26-27.  Although Atienza cites Hall's deposition testimony as support for these assertions, there
21 is no supporting testimony.  Indeed, the closest testimony on the cited pages is Hall's statement that he
22 did not believe Arboleda "was gunning it to run [him] over."  Excerpts from Deposition of Andrew
23 Hall, ECF No. 100-8, at 87:5-7.  Atienza relies on similar mischaracterizations of the record in an
24 attempt to challenge Hall's record evidence establishing that the Civic was accelerating towards Hall
25 prior to the shooting and its average speed was 14 mph.

26   Atienza's legal arguments, likewise, are without merit.  Often she resorts to hyperbole and
27 rhetoric as if disparaging Hall's arguments is sufficient.  On other occasions, she misstates the legal
28 standard, arguing that "bad tactics" and "unreasonable fear" can satisfy her obligation to establish the

specific intent to harm required for a Fourteenth Amendment violation, the related intent requirement of the Bane Act and the malice element of punitive damages. And in others, she ignores controlling authority from the Ninth Circuit while relying on factually distinguishable cases or unpersuasive authority. As an example, although this incident took place in 2018, to dispute qualified immunity Atienza relies on a rule she concedes the Ninth Circuit "announced" in 2021.

In light of these points, and as further discussed in the opening papers and below, the Court should grant summary judgment to Hall in this case.

## II.     FACTUAL BACKGROUND

This section summarizes the factual background set out in Hall's opening brief and Atienza's opposition brief. For the sake of brevity, Hall eliminates the citations to supporting evidence, which are contained in the initial pleadings.

At approximately 11:00 a.m. on Saturday, November 3, 2018, a Danville resident reported a suspicious male "person of color" approaching homes. The call was assigned to Deputy Nicolas Muller, who was with a trainee, Officer Sonasi Maka. Deputy Charles Caruso "attached" himself as a cover officer assisting Muller. Muller and Maka observed Arboleda getting into a silver Civic and made two unsuccessful attempts at a consensual stop. After Arboleda drove away the second time, Muller observed Arboleda speeding and initiated a traffic stop. Arboleda pulled over, but then again drove off, running a nearby stop sign.

Arboleda threw something out the window and later stopped on Hartz Way. Caruso, Muller and Maka parked, drew their weapons and gave verbal commands to Arboleda to stop and exit his vehicle. Despite the officers' verbal commands and drawn weapons, Arboleda again drove off, eventually proceeding northbound on Front Street.

Via the radio, Hall heard about the traffic enforcement stop and the Civic "fleeing," the subject throwing something out of his car (which Hall thought might be drugs), and Muller reporting having "the car at gunpoint and he just drove around us." To intercept the pursuit, Hall drove up Diablo Road towards Front Street, passing Martin's SUV. As Hall approached Front Street, he saw Arboleda and the two following patrol cars on Front Street driving towards Diablo Road. Hall made a left turn onto

//

Front Street and parked in the northbound "number one" lane -- the same lane of travel as the Civic and the patrol vehicles. Hall left Arboleda at least one path of travel if he continued to flee.

The Civic also stopped at approximately the same time so that the two vehicles were roughly front to front separated by a short distance. Hall "paused in the car to see if the vehicle would immediately try to flee and it remained stopped in front of [him]." Thinking Arboleda "was going to stay there" and to improve his tactical position in that event, Hall got out and started towards the rear of his vehicle, intending to use the front passenger door as cover. Hall had no intention of using deadly force and, if Arboleda fled, was going to "get back into the car and continue the pursuit."

As Hall was going to the rear of his vehicle, Martin's SUV arrived, making a wide left turn into the southbound lane of Front Street. Martin believed Arboleda had remained stationary and intended to park the SUV vehicle next to Hall's vehicle with it "nosed" in towards the Civic, i.e. angling the SUV to his left. Discovering that Arboleda was moving forward into the same southbound lane as he was in, Martin stopped quickly, blocking part of the southbound lane of Front Street.

After the SUV stopped, Arboleda did not stop or go straight but made a hard right turn into the newly formed space between Martin's vehicle and Hall's vehicle, almost hitting the SUV.

Hall saw Martin's SUV pass and stop, but continued around the rear of his vehicle. When he rounded the passenger side rear corner, he observed the Civic making its hard right turn and coming towards him. Prior to this, he thought Arboleda was still stopped. Hall tried to stop his forward momentum, but could not.

Hall raised his firearm and pointed it at Arboleda, hoping that Arboleda would stop. The Civic continued towards Hall with its front wheels pointed directly at him. He backpedaled and, roughly a second after first observing the Civic before him and fearing for his safety, commenced shooting. As reflected in the photo above, by this time the Civic was extremely close to Hall.

The Civic continued forward, almost striking Hall. He continued, firing ten shots in all and stopping with three bullets remaining. The first five shots hit the same general area of the front windshield. The next two hit the front windshield, but more on the passenger side. Two of the remaining three shots did not enter the vehicle and the third went through the front passenger window. The autopsy determined that there was a single fatal shot, which traveled "from the victim's right to

1  left, front to back, and slightly downward." The autopsy did not, and could not, determine which shot
2  of Hall's ten shots was the fatal one or Hall's location when he shot the fatal shot.
3   That evening, Hall informed investigators that fearing for his life, he fired between "four and
4  five rounds" and then, fearing for the safety of Sergeant Martin, he fired an additional "four or five
5  more rounds." After Hall reviewed the video footage, he told the investigators:  "I initially thought
6  that I had fired my weapon, paused and then fired my weapon.  Um, I now see that it was one
7  continuous volley, um, as the vehicle moved, um, passed my car and Sergeant Martin's car.  Once the
8  threat had passed me I stopped firing."

## III. LEGAL ARGUMENT

### A. Atienza's Factual Assertions Lack Evidentiary Support

Atienza does not dispute that Hall's opening papers meet his initial evidentiary burden of establishing no disputed material facts.  In this situation, to avoid summary judgment, Atienza must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute [as to a material fact] exists." *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *see also* Federal Rule of Civil Proc. 56(c)(1)(A).  She fails to do so as the factual contentions in her brief are not supported by evidence and are contrary to the video evidence, which cannot be disputed under *Scott v. Harris,* 550 U.S. 372, 380-81 (2007).

#### 1. Hall Reasonably Feared Arboleda Would Run Him Over

As noted above, Atienza repeatedly asserts that Hall did not believe that Arboleda "was trying to run him over." Opp. Brief at 1:19-20; *see also id.* at 10:8, 12:8-9, 19:7.  She makes similar assertions that Hall did not believe Arboleda posed a threat.  *Id.* at 12:9-10, 18:27, 21:15-16.  The citation to Hall's deposition testimony on pages 86 and 87 does not support her assertions as the closest testimony from Hall on those pages is that Hall did not believe Arboleda "was gunning it to run [him] over." ECF No. 100-8 at 87:5-7.  A driver can imperil pedestrians without "gunning" it.  Consistent with that, Hall expressly declared that he did fear Arboleda would run him over. Declaration of Andrew Hall, ECF No. 95, ¶9 at 3.

//

//

### 2. The Civic's Average Speed was 14 mph and It was Accelerating Towards Hall Prior to the Shooting

According to Atienza, the report of Hall's expert Jason Alexander "states that Laudemer was traveling at or about 5 mph when Defendant shot him and that the car accelerated after Laudemer was shot." Opp. Brief at 1:27-2:2. The Jason Report states the opposite. Jason concluded that "The Honda was accelerating as it moved toward and past Deputy Hall" based on video footage from a nearby Valero station. ECF No. 94-1 at 8. Using this same footage, Jason also concluded that "The average speed [of the Civic] was 14 mph which means the car would travel 21 feet in one second. The beginning speed appears to be lower but even at 5 mph it would move at 7.3 feet per second." *Id.* at 8. As is clear from this statement, the reference to "5 mph" is not an opinion regarding the actual speed of the Civic, but an example of how miles per hour translates to feet per second. Under *Scott*, the video evidence analyzed by Jason is conclusive and precludes Atienza from asserting contradictory facts. *Scott,* 550 U.S. at 381; *J.A.L. v. Santos,* 724 Fed. Appx. 531, 532-33 (9th Cir. 2018).

Atienza also cites Hall's deposition testimony as support for her claim that the Civic was not accelerating towards him. Opp. Brief at 18:26-27 (citing Hall Depo. at 86). Again, Atienza mischaracterizes Hall's testimony. On the cited page, Hall agreed that the "Honda was driving at a normal speed like it was leaving a red light," clarifying that it was "not spinning its tires or anything to that effect." ECF No. 100-8 at 86:15-18. Vehicles accelerate when they "leave a red light" (otherwise they don't leave) and Hall's reference to "spinning its tires" further establishes that he perceived the Civic to be accelerating at a "normal speed." Similarly, in Hall's statement to the investigators, which was the basis of this question, Hall stated in full: "it appeared he was just proceeding normal, uh, like as if someone would leave a red light - I'm sorry, uh, stopped at a red light and gets a green, and then proceeds." ECF No. 100-12, at 15:660-662. Notably, the acceleration of the Civic towards Hall is discernible on the Muller dash cam footage, which shows the Civic "lurching" forward as it completes the right hand turn. *See* Dash Cam Footage, Exhibit B to ECF No. 97, at 8:43-8:45.

In sum, Atienza has no factual support for her assertions that the Civic was traveling 5 mph when Hall shot or that it was not accelerating towards Hall prior to the shooting.

//

### 3. Arboleda's Ability to Chose His Path of Travel

Atienza contends that Martin's SUV was "directly blocking Mr. Arboleda's path of travel." Opp. Brief at 9:21-22. It is unclear what Atienza means by this assertion. If she means that Arboleda was unable to continue straight and pass Martin's SUV on the passenger side, she has no factual support for this contention (and cites none). To the contrary, Arboleda could have continued straight and passed Martin's SUV on the passenger side. *See* ECF No. 94-1, Figure 26 at 15.

### 4. Hall Did Not Know Arboleda Would Drive into the Gap

Atienza asserts that Hall "knew that the gap between his vehicle and Sergeant Martin's was the only path Mr. Arboleda could drive in order to continue." Opp. Brief at 10:2-4. Later Atienza asserts that Hall's "sworn testimony was that he expected this chain of events." *Id.* at 23:18. These assertions are erroneous to the extent that they suggest Hall somehow foresaw that Arboleda would drive into this gap. While Hall anticipated that Arboleda might continue to flee, he could not foresee Arboleda driving into the gap because the gap did not exist until Martin suddenly parked his vehicle. Not surprisingly, in the deposition testimony cited by Atienza, Hall only stated that once the Civic was in the gap, "that was the only route it could have gone." ECF No. 100-12 at 83:18-24.

### 5. Hall's Location While Shooting

Atienza makes two false assertions regarding Hall's location at the time he fired his weapon.

Her first assertion is that Hall shot "while he stood at the side of the" Civic, citing the footage Muller dash cam. Opp. Brief at 10:23. However, the Muller dash cam footage is taken from behind the Civic and does not clearly depict Hall's location relative to the Civic. By contrast, the footage from Hall's BWC establishes that Hall's initial shots were fired while the Civic was still coming towards Hall. *See* ECF No. 94-1, Figure Nos 32, 34, and 36 at 20; *compare id.,* Figure Nos. 31, 33, and 35 at 20. And as is evident from the photo on page 1 of this brief and the photos in the Jason Report, Hall's first shots were not from the "side" of the Civic. *See* ECF No. 94-1 at 20. And the first seven shots all struck the front windshield. ECF No. 94-11 (photo of Civic's front windshield).

Atienza's second assertion is that Hall shot through the back passenger window. Opp. Brief at 10:25. He did not. The last shot by Hall struck the "B" pillar and did not enter the vehicle or hit Arboleda. *See* ECF No. 94-1 at 18.

**B.    Hall did not Violate Arboleda's Fourth Amendment Rights**

Hall's opening brief established that under the *Graham* factors, his use of deadly force was reasonable under the Fourth Amendment. ECF No. 93 at 11:4-16:20. He cited evidence, including the video evidence, demonstrating that Arboleda's Civic posed an immediate risk of serious harm to him prior to and after his first shot, which is the most significant *Graham* factor. Hall further demonstrated that under *Garner* and subsequent cases, once he established the Civic posed an immediate risk of serious harm to himself, he could continue to shoot at the Civic even after it was no longer a threat to him. *See id.* at 12:24-15:1. Atienza does not dispute this point in her opposition brief and, thus, concedes it. *Tyler v. Travelers Commer. Ins. Co.,* 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020); *Ramirez v. Ghilotti Bros.,* 941 F. Supp. 2d 1197, 1210 & n. 8 (N.D. Cal. 2013). Summary judgment on the Fourth Amendment claim is appropriate.

**1.    The Objective Evidence Establishes Arboleda Posed an Imminent Threat of Serious Harm to Hall and Others**

The undisputed evidence, including the still images used in this brief and the opening brief, establishes Arboleda drove his Civic with its wheels pointed directly at Hall while Hall was trapped in the gap between the two patrol vehicles. At that point, Hall had no obvious means of evading the Civic and only a split second to evaluate and react to the threat posed by the Civic. Atienza does not dispute these facts, which are sufficient to support summary judgment on this claim under two Ninth Circuit cases addressing the use of deadly force in similar situations: *Monzon v. City of Murrieta,* 978 F.3d 1150 (9th Cir. 2020)*,* and *Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010). *See* ECF No. 93, at 12:7-23. However, in addition, the undisputed evidence also establishes that the Civic was accelerating towards Hall prior to the shooting and traveling at an average speed of 14 mph - facts that further support summary judgment on this claim.

Atienza does not mention or distinguish either *Monzon* and *Wilkinson* in her opposition brief. Instead, she claims erroneously that Hall did not believe that the Civic posed a threat. *See* Opp. Brief at 12:8-9. As noted above, Atienza has no support for this claim.

Atienza also asserts that Hall was not in danger because he was able to just avoid being hit. *See id.* at 12:11-13. However, this assertion fails under *Monzon* and *Wilkinson*.

*Monzon*, consistent with *Graham* and other leading cases, precludes using hindsight "to dissect, evaluate and second-guess the officers' actions piecemeal. That would be a serious mistake. Cherry-picking specific facts in hindsight is not at all reflective of how this event transpired in real life. It all happened in less time than it took to type this sentence . . ." 978 F.3d at 1157-58. As *Monzon* further noted, "even a [vehicle] traveling at only 10 mph moves approximately 15 feet *every* second, which is significant when a [vehicle] that has been driven erratically is moving in close proximity to officers." 978 F.3d at 1161 (italics in original). These statements apply with equal force here. It is easy for Atienza to say now that Hall was not hit, but it was not apparent that he would be able to evade the Civic when he first discovered it driving towards him while he was trapped between two vehicles. Indeed, despite his best efforts to evade being hit, he was only just able to do so. ECF No. 94-1, Figure 19 at 12 (showing Hall inches from being hit by the Civic). And Hall had less time than it took to type or read this sentence to evaluate the situation and react.

*Wilkinson* also flatly precludes Atienza's assertion. "'[T]he Fourth Amendment does not require omniscience,' and the absolute certainty of harm need not precede an act of self-protection." *Wilkinson,* 610 F.3d at 553 (quoting *Elliot v. Leavitt,* 99 F.3d 640, 644 (4th Cir. 1996)).

As her final argument, Atienza cites *Gonzalez v. City of Anaheim,* 747 F.3d 789 (9th Cir. 2014). *Gonzalez* involves a very different fact pattern but, to the extent applicable, affirmatively supports Hall. In that case, to capture a suspect, the officer got into a parked minivan and then, after the minivan started, shot the suspect, who was driving. *Id.* at 792-93. The Ninth Circuit reversed summary judgment because, *inter alia,* there was a material factual dispute regarding the speed of the minivan, specifically whether it was 3-7 mph or 40-50 mph. *Id.* at 796. At the lower speeds, the officer had no reasonable basis to fear for his safety. *Id.* And in the part of the opinion relevant here, the Ninth Circuit noted that the officer "was not on foot next to a vehicle that might run him over at any moment should it have accelerated." *Id.* at 796. Hall faced that very situation, being "on foot next to a vehicle that might run him over at any moment should it have accelerated."

In sum, Arboleda's driving posed an imminent threat of harm to Hall. As Atienza concedes, under *Garner* and its progeny, Arboleda's willingness to injure Hall because "he got in the way of escape" authorized the continued use deadly force even after Arboleda no longer posed a threat to

Hall.  *Orn v. City of Tacoma,* 949 F.3d 1167, 1177 (9th Cir. 2020); *see also* ECF No. 93 at 12:24-15:1 (citing *Orn* and other cases).  This factor, the most significant *Graham* factor, favors Hall.

### 2. Arboleda Posed a Risk of Serious Crimes

According to Atienza, Arboleda was at best "guilty of failing to pull over."  Opp. Brief at 14:7. This ignores all of Arboleda's suspicious conduct during the pursuit, such as his throwing something out the window, and driving the Civic at Hall, which constituted assault with a deadly weapon against a person known to be a peace officer - a felony under California Penal Code section 245(c).  This factor favors Hall.[2]

### 3. Arboleda Was Actively Resisting Arrest and Attempting to Evade Capture

Atienza briefly mentions this factor but does not dispute that it favors Hall.

### 4. Other Factors

Atienza argues that Hall should have warned Arboleda that he would use deadly force.  Opp. Brief at 15:8-10.  Warnings are only required where "practicable."  *J.A.L.,* 724 Fed. Appx. at 533.  Hall had less than a second to decide.  Further, Arboleda did not need a warning; Hall was standing in front of the Civic with his weapon drawn and pointed at Arboleda.  A warning was unnecessary in these circumstances.  *Monzon,* 978 F.3d at 1158 (impractical to give warning where "van went from a standstill to crashing into a cruiser at over 17 mph in 4.5 seconds").

## C. Hall Should Be Given Qualified Immunity as to the Fourth Amendment Claim

As Atienza concedes, she bears the burden of showing that it was "clearly established" that Hall's conduct would violate Arboleda's Fourth Amendment rights.  Opp. Brief at 16:4.  As the Supreme Court has repeatedly stated, in the context of a Fourth Amendment claim, the "clearly established" prong of qualified immunity requires governing authority addressing a sufficiently similar factual scenario.  *Brosseau v. Hagen,* 543 U.S. 194, 200 (2004); *Plumhoff v. Rickard,* 572 U.S. 765, 779 (2014); *Mullenix v. Luna,* 577 U.S. 7 (2015); *see also S.B. v. Cnty. of San Diego,* 864 F.3d 1010, 1015 (9th Cir. 2017).  Atienza does not meet her burden.

---

[2] Even if this factor did not favor Hall, it gives way to the more important factor regarding the degree of threat posed by Arboleda and the need to make allowance for the fact that Hall had to make a split-second decision in a chaotic situation.  *Nelson v. City of Davis,* 685 F.3d 867, 880 (9th Cir. 2012).

In her opposition brief, Atienza ignores the numerous Ninth Circuit decisions that affirmatively hold Hall's shooting to be permissible under the Fourth Amendment. *Monzon* and *Wilkinson* are two such cases. She also ignores the additional authority from other Circuits cited by Hall. *See* ECF No. 93 at 17:23-18:5. And she does not acknowledge *Gonzalez* as support for Hall on this point.

Instead, Atienza cites two cases as meeting her burden: *Orn*, 949 F.3d 1167, and *Villanueva v. California,* 986 F.3d 1158 (9th Cir. 2021). They do not because 1) both post-date this incident and 2) both are factually distinguishable and, thus, do not "clearly establish" that Hall's conduct violated the Fourth Amendment in the factual situation that he faced.

In *Orn,* a 2020 decision, the Ninth Circuit noted that "[a] moving vehicle can of course pose a threat of serious physical harm, but only if someone is at risk of being struck by it." 949 F.3d at 1174. However, unlike the present case, the officer involved (Clark) was not at risk because he "was never in the vehicle's path of travel." 949 F.3d at 1174-75. Instead, "Clark ran toward the passenger side of Orn's vehicle and opened fire through the passenger-side windows. At that point, Clark could not reasonably have feared for his own safety because he was on the side of Orn's vehicle as it was traveling away from him." *Id.* at 1175. Nor was the officer in danger when "he chased after Orn's vehicle and fired additional rounds . . . through the rear windshield." *Id.*

The Ninth Circuit could have concluded at that point, but went on to reject qualified immunity even accepting Clark's version of events, which was that he was put at risk when Orn's vehicle made a sharp turn. *Id.* The Ninth Circuit concluded that a jury could reject this claim because the subject vehicle is going "just five miles per hour" and given where Clark was at the side of the vehicle, he "could therefore have avoided **any risk of being struck by simply taking a step back.**" *Id.* at 1175 (emphasis added). That is not the situation Hall faced - no simple step could take him out of all danger. And Clark, unlike Hall, was aware that Orn was driving and where he was headed. *Id.* at 1173.

In *Villanueva,* after a high-speed pursuit, a Silverado truck came to a stop on a dead-end street. *Id.* at 1163. The two pursuing officers stopped and got out, standing between 15 to 20 feet away from the Silverado. *Id.* The truck "performed a three-point turn in a controlled manner" resulting in the front "generally facing" the officers. *Id.* at 1163, 64. Although the truck "was moving very slowly and was not pointed directly at either officer or accelerating," the officers opened fire. *Id.* at 1164. Per the

officers, the truck "'was moving forward at a speed of up to five miles per hour.'" *Id.* at 1170.

The Ninth Circuit rejected qualified immunity, holding "We have consistently found the use of deadly force to stop a slow-moving vehicle unreasonable when the officers could have easily stepped out of the vehicle's path to avoid danger." *Id.* That is not situation that Hall faced. When he discovered the Civic coming at him, he was trapped between the patrol vehicles with retreat his only possible way to avoid the Civic. At that time, he could not know if he would be able to retreat safely and indeed, he came within inches of being hit. *See* ECF No. 94-1, Figure 19 at 12.

Atienza asserts that in *Villanueva*, "the Ninth Circuit recently announced the following rule in motorist cases: '[W]e have found the use of deadly force against a stopped or slow-moving vehicle reasonable *only when* the driver was trying to evade arrest in an *aggressive manner* involving attempted or actual acceleration of the vehicle." Opp. Brief at 17:20-24 (quoting *Villanueva,* 986 F.3d at 1170) (italics added by Plaintiff). *Villanueva* was issued in 2021; consequently, a "rule recently announced" in that case cannot govern the qualified immunity analysis here, where the incident took place in 2018.

Even if Atienza could use *Villanueva's* new rule, it does not help her. First, it does not apply here - the Civic accelerated towards Hall prior to the shooting. Second, the cited sentence is not a new rule governing future cases, but a summary of prior Ninth Circuit decisions, including *Monzon* and *Wilkinson*. The Ninth Circuit has not yet decided whether deadly force can be used where a vehicle drives at an officer at "slow" and steady speed (but could accelerate at any time) and the officer has no means of easy evasion. Thus, the cited sentence does not, and cannot, state how the Ninth Circuit resolved this issue. However, based on *Gonzalez* and *Monzon,* there is good reason to believe it would hold the Fourth Amendment permits the use of deadly force in this situation. *Gonzalez,* 747 F.3d at 796; *Monzon,* 978 F.3d at 1161 (a speed of 10 mph is "significant" when "in close proximity").

**D.     Summary Judgment is Appropriate on Atienza's Fourteenth Amendment Claim**

Hall's opening brief established three bases for summary judgment on this claim: 1) no evidence that Hall acted with a "purpose to harm," the standard given the limited time he had to react, 2) wrongful conduct by Hall did not cause Arboleda's death, and 3) qualified immunity. *See* ECF No. 93 at 18:11-19. Atienza has no real response to these arguments; summary judgment is appropriate.

Atienza commences her opposition on this claim with hyperbole - "Defendant's killing of an

unarmed, slow-moving man who was being pursued simply because he was an unfamiliar face in an affluent neighborhood, loudly shocks the conscience." Opp. Brief at 21:2-4. Atienza does not, and cannot, offer any evidentiary support for this hyperbole. Not only was Arboleda "armed" with his Civic, she does not dispute that Hall fired his weapon in self-defense and in defense of Sergeant Martin, both legitimate reasons. *See* ECF No. 94-14 at 6:231-244.

In addition to this declaration, Atienza cites inapposite cases, specifically *Nunez v. City of San Jose,* 381 F. Supp. 3d 1192 (N.D. Cal. 2019), and *Nieto v. City and County of San Francisco,* 2015 U.S. Dist. LEXIS 154733 (N.D. Cal. November 16, 2015). In both cases, unlike here, there was a disputed issue regarding the time to deliberate. *Nunez,* 381 F. Supp. 3d at 1213-14; *Nieto,* 2015 U.S. Dist. LEXIS 154733 at *14. Here it is undisputed that Hall had at most five seconds, which is insufficient time to deliberate. *See Zion v. Cty. of Orange,* 874 F.3d 1072, 1077 (9th Cir. 2017).

### E.   Summary Judgment is Appropriate on the State Law Claims

Assuming the Court does not dismiss the three state law claims for lack of subject matter jurisdiction, the Court should grant summary judgment as to each state law claim.

#### 1.   Wrongful Death Negligence Claim

As Hall's opening brief demonstrated, there are three reasons to grant summary judgment on the wrongful death negligence claim: 1) Hall's conduct, including his pre-shooting conduct, was within the range of "reasonable actions" and, thus, not negligent; 2) Hall's conduct, even if negligent, did not proximately cause Arboleda's death; and 3) state law immunities, specifically Penal Code sections 196 and 835a bar this claim. Atienza is unable to refute any of these reasons.

In the opening brief, Hall demonstrated that his conduct was not negligent under California law. *See* ECF No. 93 at 20:15-23:1. In particular, Hall demonstrated that his plan of going to the passenger side of his vehicle was consistent with POST training and that Atienza's expert, Roger Clark, conceded that plan was a good one. *Id.* at 21:14-23:1. Atienza does not dispute these points and, thus, concedes that Hall's pre-shooting tactics were not negligent.[3] *Tyler,* 499 F. Supp. 3d at 701; *Ramirez,* 941 F.

---

[3] Elsewhere, Atienza notes that Hall admitted he did not use the "best tactics." Opp. Brief at 10:7. Hall did not need to use the "best tactics," only ones reasonable under the circumstances. *J.A.L.,* 724 Fed. Appx. at 534 (quoting *Hayes v. Cty. of San Diego,* 57 Cal. 4th 622, 632 (2013)).

Supp. 2d at 1210 & n. 8.  Given this concession and that Hall's shooting was justifiable as self-defense, Atienza has not demonstrated that Hall was negligent.

As an independent grounds for summary judgment, Hall demonstrated that even if his pre-shooting conduct was negligent, that conduct was not the proximate cause of Arboleda's death because Arboleda's conduct, specifically driving into the gap and continuing to drive towards Hall, was an intervening cause breaking the causal chain.  ECF No. 93 at 23:3-24:21.  Atienza attempts to dismiss Hall's proximate cause argument as "barely a straight-faced argument."  Opp. Brief at 23:9.  It is not; it rests on traditional tort causation principles and Ninth Circuit and other Circuit decisions.  ECF No. 93 at 23:2-24:1 (citing, *inter alia, Mendez v. Cty. of L.A.,* 897 F.3d 1067 (9th Cir. 2018)).

If there is an actual "barely a straight-faced argument," it is Atienza's counter-argument, which relies on a "strawman" mischaracterization of Hall's argument, specifically that Hall "argues that Defendant Hall did not foresee Laudemer driving around his car."  Opp. Brief at 23:16-17.  That is not Hall's proximate argument - he contends, and Atienza does not dispute, that it was not foreseeable that Arboleda would drive into the narrow gap between the patrol vehicles - a gap that did not exist when Hall made his plan - and continue to drive forward despite Hall standing in the way with his firearm pointed at Arboleda.  *See* ECF No. 93 at 23:10-22.  Hall further contends, and Atienza does not dispute, that the Ninth Circuit and other Circuits consider unforeseen criminal conduct, such as an unprovoked assault on a police officer, to be a superseding cause.  *Id.* at 24:8-15.

Finally, Hall demonstrated that the state law immunities of Penal Code sections 196 and 835a barred this claim.  Atienza does not discuss these immunities in any depth.  Opp. Brief at 23:23-24:5.  More importantly, she fails to acknowledge that the immunity of Penal Code section 196 applies where, as here, "the circumstances created a fear of death or serious bodily harm to the officer or another."  *Martinez v. Cty. of L.A.,* 47 Cal. App. 4th 334, 349 (1996).  These immunities are an independent grounds for summary judgment on the negligence claim (and the other state law claims).

**2.     The Bane Act Claim**

As Atienza concedes, if the Court grants summary judgment on the Fourth Amendment claim, it should also grant summary judgment as to this claim.  In addition, summary judgment is appropriate on this claim because of the state law immunities of Penal Code sections 196 and 835a, and because

Defendant Andrew Hall's Reply Brief in Support of Motion for Summary Judgment - Case No. C19-03440 RS
14

Atienza lacks evidence of the specific intent element of a Bane Act claim.

Atienza recognizes that she must prove this "specific intent" element, but proffers no evidence, only more rhetoric, to support this element. Opp. Brief at 25:4-14. And unsupported rhetoric about Hall's "bad tactics" and "not fearing for his life" do not establish Hall had this "specific intent." *Craig v. Cty. of Santa Clara,* 2018 U.S. Dist. LEXIS 134817, *67 (N.D. Cal. August 9, 2018).

### 3. The Assault Claim

The parties agree that summary judgment as to this claim should be granted if summary judgment is granted as to the Fourth Amendment claim.

### F. Summary Judgment Should Be Granted as to the Claims for Wrongful Death Damages and Punitive Damages

Hall has established that summary judgment is appropriate with respect to the wrongful death damage claim and the punitive damage claim.

If any of Hall's shots were reasonable, Atienza cannot prove wrongful conduct by Hall caused Arboleda's death due to the lack of evidence regarding which shot caused his death. Atienza does not dispute this causation issue, which bars her claim for wrongful death damages.

Summary judgment on punitive damage claim is warranted because there is no evidence supporting that claim. Atienza labels this argument "nonsensical" and argues she can seek such damages based on Hall's "bad tactics" and his lack of "fear for his life." Opp. Brief at 25:20-22. Atienza has no evidence to support her assertion of "bad tactics" and Hall's lack of fear for his life. Even if she had supporting evidence, at most she has only established Hall was negligent, which is insufficient to establish a basis for punitive damages. *See, e.g., Alliance for Educ., Inc. v. Airborne Wireless Network Inc.,* 2018 U.S. Dist LEXIS 223032, *22 (C.D. Cal. December 17, 2018).

## IV. CONCLUSION

The undisputed evidence establishes Hall reasonably feared for his safety prior to shooting and, thus, his shooting was justified under the Fourth Amendment and state law. That evidence further establishes that Hall's conduct, including his pre-shooting tactics, was not negligent and did not proximately cause Arboleda's death. For these and other reasons, the Court should grant this motion.

DATED: June 24, 2021

MARY ANN McNETT MASON
COUNTY COUNSEL

By: ___*/s/ D. Cameron Baker*___
     D. CAMERON BAKER
     Deputy County Counsel

Attorneys for Defendant Andrew Hall