1  MARY ANN McNETT MASON (SBN 115089)
2  County Counsel
   D. CAMERON BAKER (SBN 154432)
3  Deputy County Counsel
   COUNTY OF CONTRA COSTA
4  1025 Escobar Street, Third Floor
   Martinez, California 94553
5  Telephone:   (925) 655-2280
   Facsimile:    (925) 655-2266
6  Electronic Mail: cameron.baker@cc.cccounty.us

7  Attorneys for Defendant
8  ANDREW HALL

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12 JEANNIE ATIENZA, individually and as       No. C19-03440 RS
   successor-in-interest to Decedent
13 LAUDEMER ARBOLEDA,                          NOTICE OF MOTION AND MOTION TO
                                               STAY PROCEEDINGS PENDING APPEAL
14              Plaintiff,

15 v.                                          Date:   September 30, 2021
                                               Time:   1:30 p.m.
16 ANDREW HALL, individually;                  Crtrm:  3, 17th Floor
   PHILLIP ARBOLEDA, individually, as          Judge:  Hon. Richard Seeborg, Presiding
17 successor-in-interest to Decedent           Date Action Filed: June 17, 2019
   LAUDEMER ARBOLEDA, and DOES                 Trial Date:   December 6, 2021
18 1-50 inclusive,

19              Defendants.

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2    NOTICE OF MOTION AND MOTION........................................... 1

3    MEMORANDUM OF POINTS AND AUTHORITIES.............................. 1

4    I.     INTRODUCTION. .................................................... 1

5    II.    ISSUES TO BE DECIDED. ............................................ 2

6    III.   FACTUAL BACKGROUND............................................. 2

7    IV.   LEGAL ARGUMENT. ................................................ 2

8        A.     Hall's Appeal is Not Frivolous. ..................................... 3

9             1.     Hall Has Viable Arguments Respecting the Fourth Amendment Claim ..................................................... 4

10

11                  a.     Hall Can Credibly Dispute Whether He Violated the Fourth Amendment............................................. 4

12                  b.     Hall Has Viable Arguments Regarding Qualified Immunity as to the Fourth Amendment Claim......................... 10

13

14             2.     Hall Has Viable Arguments on Appeal Regarding Whether He Violated the Fourteenth Amendment Violation and Qualified Immunity as to That Violation ................................. 11

15

16                  a.     Hall Can Credibly Dispute Whether He Violated the Fourteenth Amendment.................................. 11

17                  b.     Hall Can Viably Assert Qualified Immunity With Respect to the Fourteenth Amendment Claim. ....................... 13

18

19        B.     The Court Should Stay Proceedings as to Atienza's State Law Claims. ...... 13

     V.     CONCLUSION.. .................................................... 15

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Acosta v. City and County of San Francisco,* 83 F.3d 1143 (9th Cir. 1996). . . . . . . . . . . . . . 10

*Amons v. Tindall,* 2021 U.S. App. LEXIS 20960 (9th Cir. July 15, 2021). . . . . . . . . . . . . . . 3

*Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brousseau v. Haugen,* 543 U.S. 194 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Castro v. Melchor,* 760 F. Supp. 2d 970 (D.Hawaii 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Centeno v. City of Fresno,* 2018 U.S. Dist. LEXIS 41249
(E.D. Cal. March 13, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Collins v. Jordan,* 110 F.3d 1363 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cunningham v. Gates,* 229 F.3d 1271 (9th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*David v. Betts,* 2021 U.S. Dist. LEXIS 108276 (D. Hawaii June 9, 2021). . . . . . . . . . . . . . 14

*Estate of Anderson v. Marsh,* 985 F.3d 726 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Estate of Slater v. King Cnty.,* 610 Fed. Appx. 601 (9th Cir. 2015). . . . . . . . . . . . . . . . . . 5, 8

*Estate of Slater v. King. Cnty.,* 2013 U.S. Dist. LEXIS 114369
(W.D. Wa. August 13, 2013)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Foster v. City of Indio,* 908 F.3d 1204 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*Gonzalez v. City of Anaheim,* 747 F.3d 789 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Graham v. Connor,* 490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8

*Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56 (1982). . . . . . . . . . . . . . . . . . . . . . . 14

*Hayes v. Cty. of San Diego,* 736 F.3d 1223 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . 12, 14

*Hernandez v. City of San Jose,* 2017 U.S. Dist. LEXIS 73803
(N.D. Cal. May 15, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*J.P. v. Cty. of Alameda,* 2018 U.S. Dist. LEXIS 136651 (N.D. Cal. August 13, 2018). . . . . . . 3

*Johnson v. Jones,* 515 U.S. 304 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Latits v. Phillips,* 878 F.3d 541 (6th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Martinez v. City of Pittsburg,* 2019 U.S. Dist. LEXIS 58568
(N.D. Cal. April 4, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

*Martinez v. City of Pittsburg,* 2019 U.S. Dist. LEXIS 37904 (N.D. Cal. March 8, 2019). . . . 12

1   *Monzon v. City of Murrieta,* 978 F.3d 1150 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

2   *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365 (9th Cir. 1998). . . . . . . . . . . . . . 11

3   *Orn v. City of Tacoma,* 949 F.3d 1167 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . 4, 9, 10, 13

4   *Robinson v. Arrugueta,* 415 F.3d 1252 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 13

5   *Ryburn v. Huff,* 565 U.S. 469 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6   *Schering Corp. v. First DataBank, Inc.,* 2007 U.S. Dist. LEXIS 45813
7   (N.D. Cal. June 18, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8   *Scott v. Harris,* 550 U.S. 372 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9   *Stewart v. Donges,* 915 F.2d 572 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tennessee v. Garner,* 471 U.S. 1 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
10
*Thomas v. Durastanti,* 607 F.3d 655 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8
11
*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002). . . . . . . . . . . . . . . . . . 3
12
*Villanueva v. California,* 986 F.3d 1158 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
13
*Waterman v. Batton,* 393 F.3d 471 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
14
*Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 7, 8, 12
15
*Wroth v. City of Rohnert Park,* 2019 U.S. Dist. LEXIS 68068
16   (N.D. Cal. April 22, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17   *Zion v. Cty. of Orange,* 874 F.3d 1072 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, September 30, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3, 17th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Andrew Hall will and hereby does move this Court for an order staying all proceedings, including trial, relating to Plaintiff Jeannie Atienza's state law claims pending resolution of his appeal of this Court's August 4, 2021 Order. *See* Notice of Appeal, ECF No. 109; Order Denying Motion for Summary Judgment, ECF No. 105. This motion rests on the following grounds: 1) filing a Notice of Appeal automatically stays all claims subject to that Notice; and 2) Atienza's federal and state law claims are so legally and factually intertwined that judicial economy and the prejudice to Hall warrant staying proceedings as to the state law claims.

This motion is supported by this notice, the memorandum of points and authorities, all the papers and records on file in this action, and such other materials as may be submitted at or before the hearing on the motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff Jeannie Atienza asserts five claims against Hall, the sole defendant, arising from the shooting of her son, Laudemer Arboleda, on November 3, 2018 - two Section 1983 claims under the Fourth and Fourteenth Amendments respectively and three related state law claims. *See* Fourth Amended Complaint, ECF No. 40.

On August 4, 2021, this Court denied Hall's Motion for Summary Judgment, holding, *inter alia,* that Hall was not entitled to qualified immunity as to the Fourth and the Fourteenth Amendment claims. *See* Order Denying Motion for Summary Judgment, ECF No. 105, at 9-10. On August 16, 2021, Hall filed a Notice of Appeal as to that Order. ECF No. 109.

Hall now requests a stay of all proceedings relating to the state law claims, including trial currently set for December 6, 2021, pending resolution of his appeal. This motion should be granted as 1) the filing of the Notice automatically stays proceedings as to the claims

---

1  encompassed by that Notice and 2) Atienza's state law claims are so factually and legally

2  intertwined with the stayed federal claims that judicial economy and the prejudice to Hall

3  warrant staying the proceedings as to the state law claims.

## II.     ISSUES TO BE DECIDED

5      1.  Should the Court stay all proceedings relating to the state law claims in light of

6  Hall's pending appeal?

## III.    FACTUAL BACKGROUND

8      On June 3, 2021, Hall filed a motion for summary judgment as to all five claims at issue

9  in this case, asserting qualified immunity as to the federal claims.  ECF No. 93 at 16-18, 19-20.

10  On August 4, 2021, the Court denied the motion in its entirety, holding, *inter alia,* that Hall

11  was not entitled to qualified immunity with respect to the Fourth and Fourteenth Amendment

12  claims.  ECF No. 105.  The Court cited its denial of summary judgment as to the Fourth

13  Amendment claim as a basis to deny summary judgment as two state law claims - the Bane Act

14  claim and the assault claim.  *See id.* at 11-12.  Elsewhere, the Court acknowledged the

15  wrongful death negligence claim rests on the reasonableness of Hall's conduct.  *Id.* at 11.  That

16  is the same standard for evaluating the Fourth Amendment claim.  *See id.* at 7 n.3.

17      On August 16, 2021, Hall filed a Notice of Appeal as to the August 4 Order.  ECF No.

18  109.  The Ninth Circuit has already set a briefing schedule - Hall's opening brief is due

19  November 24, 2021; Atienza's responsive brief is due December 27, 2021; and Hall's reply

20  brief is due January 17, 2022.

21      Hall now moves for a stay of all proceedings relating to the state law claims, including

22  trial currently set for December 6, 2021, pending resolution of Hall's appeal.

## IV.    LEGAL ARGUMENT

24      Hall has appealed the denial of qualified immunity as to the Fourth and Fourteenth

25  Amendment claims.  ECF No. 109.  Absent a certification by the Court that Hall's appeal is

26  frivolous, Hall's appeal automatically stays further proceedings as to these federal claims.

27  *Hernandez v. City of San Jose,* 2017 U.S. Dist. LEXIS 73803, *42 (N.D. Cal. May 15, 2017).

28  Arguably, Atienza's state law claims are within the Notice because they are so factually and

1  legally intertwined with the federal claims.  Even if the state law claims are not automatically

2  stayed, these claims are so legally and factually intertwined with the federal claims that

3  judicial economy and the prejudice to Hall warrant a stay as to the state law claims as well.

4       Hall discusses these points in further detail below.

5  **A.**    **Hall's Appeal is Not Frivolous**

6       The standard for certifying an appeal as frivolous is "demanding."  *J.P. v. Cty. of*

7  *Alameda,* 2018 U.S. Dist. LEXIS 136651, *6 (N.D. Cal. August 13, 2018).

8  > To declare the appeal frivolous, the Court must find that it is "wholly without

9  > merit."  *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 n.3 (9th
   > Cir. 2002). This means that the appeal must be "so baseless that it does not
   > invoke appellate jurisdiction," such as when "'the disposition is so plainly

10 > correct that nothing can be said on the other side."  *Apostol v. Gallion*, 870 F.2d
   > 1335, 1339 (7th Cir. 1989).

11

12 *Schering Corp. v. First DataBank, Inc.*, 2007 U.S. Dist. LEXIS 45813, *9 (N.D. Cal. June 18,

13 2007); *see also Martinez v. City of Pittsburg,* 2019 U.S. Dist. LEXIS 58568, *3 (N.D. Cal.

14 April 4, 2019).  It is Atienza's burden to meet this demanding standard.  *Stewart v. Donges*,

15 915 F.2d 572, 577 (10th Cir. 1990); *see also Apostol,* 870 F.3d at 1339.  She cannot do so.

16      To resolve an appeal of the denial of qualified immunity on summary judgment, the

17 Ninth Circuit conducts a *de novo* review and "view[s] the facts and draw[s] all reasonable

18 inferences 'in the light most favorable to the party opposing the [summary judgment]

19 motion.'"  *Wilkinson v. Torres,* 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Scott v. Harris,* 550

20 U.S. 372, 378 (2007)) (alteration in original); *see also Amons v. Tindall,* 2021 U.S. App.

21 LEXIS 20960, *8 (9th Cir. July 15, 2021).  Hall cannot raise "'a *fact*-related dispute about the

22 pretrial record, namely whether or not the evidence in the pretrial record was sufficient to

23 show a genuine issue of fact for trial.'"  *Foster v. City of Indio,* 908 F.3d 1204, 1210 (9th Cir.

24 2018) (quoting *Johnson v. Jones,* 515 U.S. 304, 307 (1995)).  He can, however, raise other

25 arguments regarding the factual record, including:  1) that there is no evidence in the record as

26 to a fact; 2) that a disputed fact is not material; and 3) that the evidence in the record, such as

27 videotape or other objective evidence, "clearly contradicts" the version of facts asserted by

28 Atienza (or found by the Court).  *Estate of Anderson v. Marsh,* 985 F.3d 726, 731 n.3 (9th Cir.

2021); *Cunningham v. Gates,* 229 F.3d 1271, 1286 (9th Cir. 2000); *Collins v. Jordan,* 110 F.3d 1363, 1370 (9th Cir. 1996).

As discussed below, Hall has credible arguments regarding whether he violated the two Amendments at issue and, if so, whether he should have been granted qualified immunity.

### 1.    Hall Has Viable Arguments Respecting the Fourth Amendment Claim

#### a.    Hall Can Credibly Dispute Whether He Violated the Fourth Amendment

On appeal, Hall will contend, *inter alia*:  1) the undisputed evidence, including video evidence, establishes that he did not violate the Fourth Amendment; 2) any factual disputes are not material; and 3) the Court failed to properly apply the legal standard for determining excessive force.  These arguments have merit.

This Court denied summary judgment because, in its view, the second *Graham* factor, whether Arboleda's Civic posed an immediate threat to Hall's safety or others, weighed against Hall.  ECF No. 105 at 8.  The Court noted three material factual disputes: 1) the speed of the Civic, 2) the direction of the Civic's front wheels, and 3) when Arboleda made the decision to drive into the corridor between Hall's vehicle and Sergeant Martin's patrol vehicle. *See id.* at 6-7.  As to the first dispute, the Court found "it must be assumed the Honda was moving fairly slowly." *Id.* at 7.  The Court also noted that "[w]hile it is of course possible that Officer Hall's shot changed the Honda's course, it appears Officer Hall, like the officer in *Orn*, could have defused the immediacy of the threat simply by stepping back." *Id.* at 8 (discussing *Orn v. City of Tacoma,* 949 F.3d 1167 (9th Cir. 2020)).

Hall can argue on appeal the undisputed facts, when properly analyzed, demonstrate that he did not violate the Fourth Amendment.  In Hall's view, the material facts are: 1) Hall was on foot in the Civic's path of travel; 2) he was in a confined space between the two patrol vehicles; 3) the Civic continued to drive towards him; 4) the entire incident took roughly 7 seconds; and 5) Hall had less than 1 second to evaluate the threat posed by the Civic and react.

Hall will highlight the brevity of the incident and having to make a split-second decision because in *Graham v. Connor,* 490 U.S. 386 (1989), the Supreme Court held that

1   courts "must [] allow[] for the fact that police officers are often forced to make split-second

2   judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the use of

3   force that is necessary in a particular situation." *Id.* at 396-97.  In *Estate of Slater v. King*

4   *Cnty.,* 610 Fed. Appx. 601 (9th Cir. 2015), the Ninth Circuit held that it could not "overlook"

5   *Graham's* admonition respecting "'the fact that police officers are often forced to make split-

6   second judgments – in circumstances that are tense, uncertain and rapidly evolving," when

7   addressing a shooting situation that unfolded over 18 seconds.  *Id.* at 602; *Estate of Slater v.*

8   *King. Cnty.,* 2013 U.S. Dist. LEXIS 114369, *6 (W.D. Wa. August 13, 2013).

9          In that case, the officer at issue (Cougan) believed the suspect (Slater) to be armed with

10   a knife, but Slater was not.  2013 U.S. Dist. LEXIS 114369, *5-6.  The district court held

11   factual disputes precluded summary judgment on whether the shooting violated the Fourth

12   Amendment, but granted summary judgment on qualified immunity grounds.  *Id.* at *10-16.

13   On appeal, the Ninth Circuit affirmed summary judgment - not on qualified immunity, but on

14   the ground that Cougan did not violate the Fourth Amendment, holding "there are no disputes

15   of fact that could lead to a contrary conclusion."  610 Fed. Appx. at 602.

16          The atmosphere was fraught with menace as Slater rapidly approached, refused
            to obey commands to stop and was almost upon Cougan.  In that rapidly
17          evolving situation, it was reasonable for Cougan to fire his weapon at Slater.
            There are some disputed facts, but none of them are material to determining the
18          reasonableness of Cougan's response under those stressful circumstances:  for
            example, the fact that, as it turned out, Slater was not actually armed as he
19          resolutely marched towards Cougan, the fact that less intrusive alternatives
            might have been available, and the fact that the officers did not expressly say
20          they would shoot if Slater did not stop advancing.
     *Id.* at 602-03.
21
            In both *Wilkinson* and *Monzon v. City of Murrieta,* 978 F.3d 1150 (9th Cir. 2020)*,* the
22
     Ninth Circuit similarly stressed the importance of the incidents occurring rapidly without time
23
     for the officers to evaluate and react.  In *Wilkinson*, the Ninth Circuit discounted "Plaintiffs'
24
     sanitized version of the incident" because "this version omits the urgency of the situation.
25
     After all the record is uncontroverted that this entire episode occurred in less than nine
26
     seconds."  *Id.* at 551-52.   And in *Monzon*, the Ninth Circuit held
27
28          Monzon's driving endangered the officers and left them with only seconds to consider
            less severe alternatives.  Judges and lawyers viewing an event like this in hindsight

---

1    from the comfort of their armchairs are often tempted to dissect, evaluate, and second-
2    guess the officers' actions piecemeal.  That would be a serious mistake.

*Id. at 1158.*

3        The Fourth Circuit conducted a similar analysis in *Waterman v. Batton,* 393 F.3d 471
4
5    (4th Cir. 2005).  It first noted facts supporting a reasonable belief that the officers faced an
6    immediate threat and then facts "weighing against a conclusion that Waterman was trying to
7    run over them."  *Id.* at 477, 478.  The Fourth Circuit went on:

8        Of course, the critical reality here is that the officers did not have even a moment
9        to pause and ponder these many conflicting factors.  At the instant that
         Waterman's vehicle lurched forward, the vehicle could have reached Officers
         Batton and Heisey in about one second even without accelerating further, and in
         even less time if it had continued to accelerate.  Thus, if the officers had paused
10       for even an instant, they risked losing their last chance to defend themselves.

11   *Id. at 478.*  "[A]lthough [the officers] could have held their fire and taken the chance that
12   Waterman's acceleration [] was not for the purpose of committing another assault against an
13   officer," the Fourth Amendment did not require them not to shoot.  *Id.* at 479.

14       Other Circuits are in accord.  In *Robinson v. Arrugueta,* 415 F.3d 1252 (11th Cir. 2005),
15   the Eleventh Circuit found no Fourth Amendment violation where the officer had "at most,
16   2.72 seconds to react" and the vehicle at issue was moving "forward at a likely speed of
17   around one to two miles per hour."  *Id.* at 1254.  And in *Thomas v. Durastanti,* 607 F.3d 655
18   (10th Cir. 2010), the Tenth Circuit found no Fourth Amendment violation where the officer
19   shot at a vehicle moving "deliberately out of the parking lot."  *Id.* at 665.  "Although Agent
20   Durastanti's reasonable perceptions are what matters, he had mere seconds to react, and his
21   actions in firing the first couple of shots were reasonable, even if mistaken."  *Id.* at 666.

22       In light of the foregoing cases, the Ninth Circuit could conclude that Hall reasonably
23   believed he was faced an immediate risk of being run over by the Civic given the undisputed
24   evidence that Hall was in a position of peril, the Civic was moving toward him and his having
25   to make a split second decision.

26       Further, Hall can contend that the factual disputes cited by the Court are not material.  It
27   is immaterial whether the Civic was going 14 mph or 5 mph or "slower" (as the Court found)
28   in light of Hall's proximity to the Civic and how little time he had to make a decision.  *See*

1  *Robinson,* 415 F.3d at 1254, 1256 (the vehicle at issue was going between 1 and 2 mph);

2  *Thomas,* 607 F.3d at 665.  That dispute is also immaterial because the Civic could have

3  suddenly accelerated.  *See Wilkinson,* 610 F.3d at 552; *Gonzalez v. City of Anaheim,* 747 F.3d

4  789, 796 (9th Cir. 2014) (*en banc*).

5        The precise direction of the front wheels of the Civic is immaterial because Hall was

6  the Civic's path of travel.  *See, e.g.,* Report of Alexander Jason, ECF No. 94-1, Figures 11-13,

7  15-19 at 7, 9-10; ECF No. 108, Ex. H; and Exhibit A hereto.  Further, even if Hall was not

8  directly in the Civic's path, which is contrary to the video evidence, Hall still "could have been

9  run over in about one second" if the Civic rapidly accelerated or "had turned slightly toward"

10  him.  *See Wilkinson,* 610 F.3d at 552; *Waterman,* 393 F.3d at 479.

11        It is immaterial when precisely Arboleda made the decision to turn into the corridor.[1]

12  The key facts are that he made a sharp right hand turn and that Hall saw the Civic turning into

13  the corridor.  As indicated in *Waterman,* Hall could reasonably interpret that turn as an

14  aggressive act on Arboleda's part, particularly when the Civic continued forward despite Hall

15  with his gun drawn standing in front of it.

16        Finally, the Court's observation that "[w]hile it is of course possible that Officer Hall's

17  shot changed the Honda's course, it appears Officer Hall, like the officer in *Orn*, could have

18  defused the immediacy of the threat simply by stepping back" is immaterial as well.  As an

19  initial point, it is immaterial because the video evidence shows that the Civic did, in fact, alter

20  course after Hall fired his first shot.  This alteration can be discerned from the change in the

21  direction of the Civic's front wheels from 5.205 seconds to 6.073 seconds after the start of the

22  incident.  *See* Expert Report of Alexander Jason, ECF No. 94-1, insets in Figures 19 and 20, at

23  12.  Notably, Hall fired his first shot at 5.072 seconds.  *Id.* at 8.

24        It is immaterial for other reasons as well.  In *Thomas,* the Fourth Circuit expressly held

25  whether the officer "could have stepped out of the way" was immaterial because the officer

26  does not always need to use the least restrictive means as long as the officer's conduct is

27

28       [1]  Even if when Arboleda made this decision is material, the video evidence resolves any possible dispute, showing when Martin parked his SUV and when Arboleda started to make the turn.

1  reasonable.  607 F.3d at 665.  And it is immaterial because the reasonableness of Hall's use of

2  force does not focus on whether Hall was in immediate danger, but whether he had a

3  reasonable basis to believe that he was in immediate danger.  *Monzon,* 978 F.3d at 1157; *see*

4  *also Thomas,* 607 F.3d at 666 (officer can act reasonably even if mistaken about the threat).

5        The undisputed evidence demonstrated he did have a reasonable basis for his belief.

6  When Hall first observed the Civic, he was rounding the right rear corner of his patrol vehicle

7  and moving in the corridor between his patrol vehicle and Martin's patrol vehicle, i.e. into the

8  Civic's path of travel.  ECF No. 95, at ¶¶8-9.  His forward momentum was such that he was

9  initially unable to stop, much less take a step back.  *Id.,* ¶9.  At this point, with the Civic

10 immediately in front of him and proceeding forward, getting ever close, he has to make an

11 immediate decision whether or not to shoot.

12       Further to the point, Hall was not wrong in his assessment of the threat.  Notably,

13 despite the Civic's change of direction and despite Hall's efforts to evade the Civic, he almost

14 was hit; as reflected in a still image presented during oral argument, the Civic's front right

15 wheel was within inches of running over Hall's right foot.  *See* ECF No. 108, Exhibit J.  Thus,

16 Hall would have been hit if Arboleda had "gunned" it or swerved to hit Hall.

17       The fact that Hall ultimately was not hit does not impact this analysis.  *Graham* does

18 not permit hindsight.  *Graham,* 490 U.S. at 396; *Wilkinson,* 610 F.3d at 1158; *see also Ryburn*

19 *v. Huff,* 565 U.S. 469, 477 (2012) ("judges should be cautious about second-guessing a police

20 officer's assessment, made on the scene, of the danger presented by a particular situation.").

21 "Even if in hindsight the facts show that [the officer] perhaps could have escaped unharmed,

22 we conclude that a reasonable officer could have perceived [the suspect] was using the Escort

23 as a deadly weapon."  *Robinson,* 415 F.3d at 1256; *see also Estate of Slater,* 610 Fed. Appx. at

24 603 (immaterial that Slater was not actually armed).

25       In sum, it was reasonable for making this decision, Hall could consider Arboleda's turn

26 into the corridor and continuing to go forward as aggressive acts and could consider the

27 dangers if the Civic accelerated suddenly or swerve.  In this situation with so little time to

28 assess, a reasonable officer could believe that "taking a step back" would not end the risk of

1  being struck, much less "any risk of being struck" -- the standard the Ninth Circuit employed

2  in *Orn. Orn,* 949 F.3d at 1175.

3       Significantly, when the Ninth Circuit discussed Clark's ability to step back in *Orn,* it

4  did so in a materially different factual context.  Clark was not out in the open or trapped

5  between two patrol vehicles, but positioned behind the right rear bumper of his SUV, where he

6  was "imperilled" when the Montero turned to the right.[2]  949 F.3d at 1173, 1175.  The

7  diagram used by the Ninth Circuit makes clear that in this position, Clark "could [] have

8  avoided **any risk** of being struck simply by taking a step back" - a "common-sense

9  conclusion" - because with that step back, Clark was fully shielded by the SUV and entirely

10  out of the Montero's path of travel, even if it suddenly accelerated or tried to swerve in his

11  direction.  Notably, Clark's time to react was not an issue in *Orn.*

12       Finally, as an addition grounds for holding Hall did not violate the Fourth Amendment,

13  Hall will contend, as he has before this Court, that due to the manner in which Arboleda drove

14  the Civic at Hall, under *Tennessee v. Garner,* 471 U.S. 1 (1985), and its progeny, Hall was

15  entitled to continue to use deadly force even after he himself was no longer in danger.  In *Orn,*

16  the Ninth Circuit acknowledged an officer may use deadly force where a motorist's prior

17  interactions with police demonstrate that 'he either was willing to injure an officer that got in

18  the way of escape or was willing to persist in extremely reckless behavior that threatened the

19  lives of all those around.'"  *Orn,* 949 F.3d at 1177 (quoting *Latits v. Phillips,* 878 F.3d 541,

20  548 (6th Cir. 2017)); *see also Thomas,* 607 F.3d at 666-67 (discussing this issue).  The video

21  evidence is objective evidence that Arboleda "was willing to injure an officer [Hall] that got in

22  the way of escape."[3]  Notably, it is undisputed that the incident took place very close to

23  downtown Danville, which would have busy on a Saturday morning.  *See* Deposition of

24  Christopher Martin, ECF No. 94-6, at 13:25-14:15, 36:20-37:3.

25       In light of the foregoing, it cannot be said that Hall's appeal with respect to the Fourth

26

27       [2]  According to Orn, Clark was not in that position, but on a nearby grassy knoll.  949 F.3d at
28  1172.  Given this factual dispute, the portions of *Orn* cited in this case and the Court's Order are dicta.

       [3]  Hall does not predicate his argument on the Civic "speeding."

1    Amendment claim is baseless and entirely devoid of merit.

2                    **b.    Hall Has Viable Arguments Regarding Qualified Immunity as
                            to the Fourth Amendment Claim**
3

4            Hall also have viable arguments respecting the "clearly established" prong of qualified

5    immunity.[4]  Hall can cite the cases noted above as a basis for arguing it was not clearly

6    established that his conduct would violate the Fourth Amendment.  And he can cite Atienza's

7    failure to cite any prior controlling cases finding a Fourth Amendment violation in a similar

     factual scenario.
8

9            Simply put, there are no prior Supreme Court or Ninth Circuit decisions holding that an

10   officer violated the Fourth Amendment when the officer was on foot in the open in the path of

11   an oncoming vehicle and had only a second to decide whether to use deadly force or not.

     Certainly, the Court did not note any such decision in its Order.  *See* ECF No. 105 at 10.
12

13           In her opposition brief, Atienza cited *Orn* and *Villanueva v. California,* 986 F.3d 1158,

14   1170 (9th Cir. 2021) as contrary controlling decisions.  *See* E.C.F. No. 100 at 17.  *Villanueva*

15   post-dates the incident and, thus, cannot support her position on the "clearly established"

16   prong.  And *Orn* is both factually and legally distinguishable.  The material factual differences

17   between *Orn* and this case, including differences in positions and the difference in time to

     react, are discussed above.  *See supra* at 9.  In addition, the Ninth Circuit in *Orn* articulated a
18
     very specific "avoidance of any risk" standard.  *See* 949 F.3d at 1175.  A reasonable officer in
19
     Hall's situation could conclude that standard was not met, because based on Hall's positioning
20
     and the possibility the Civic could have swerved or accelerated, it was uncertain whether
21
     retreat could be done safely.  And that same reasonable officer could find it reasonable to
22
     shoot in light of the statement in *Orn* that "[a] moving vehicle can of course pose a threat of
23
     serious physical harm [] if someone is at risk of being struck by it."  949 F.3d at 1174.
24
             Any attempt by Atienza to use *Acosta v. City and County of San Francisco,* 83 F.3d
25
     1143 (9th Cir. 1996), will face the similar hurdles.  In *Acosta,* the officer (Yawczak) was
26

27   _____

28           [4]  The Court declined to perform the qualified immunity analysis because "the parties actively
     disagree about what occurred." ECF No. 105, at 10.  Hall contends that any factual disputes are not
     material and, thus, even if resolved in Atienza's favor, Hall should be given qualified immunity.

1  chasing two suspects and saw them get into a car.  After the car moved slightly and slowly,

2  Yawczak fired two shots, one of which killed Acosta.  At trial, the jury concluded the officer

3  had no reasonable basis to believe himself threatened.  The Ninth Circuit concluded that given

4  the evidence at trial, "the jury could have reasonably concluded that a reasonable officer, who

5  had positioned himself facing the driver so that he was standing closer to the side than the

6  dead-center of the car, would have recognized that he could avoid being injured when the car

7  moved slowly, by simply stepping to the side." *Id.* at 1146.  Thus, as in *Orn,* Yawczak had an

8  obvious means to "avoid being injured" - a simple step to the side.  *Id.*

9         Finally, Hall can credibly contend that his conduct falls in the "hazy border between

10  excessive and acceptable force." *Brousseau v. Haugen,* 543 U.S. 194, 201 (2004).  This

11  argument applies to all of his initial shots, including shots fired after he himself was no

12  longer in immediate danger.

13         These arguments respecting qualified immunity are an independent basis to hold that

14  Hall's appeal is not frivolous with respect to the Fourth Amendment claim.

15             **2.    Hall Has Viable Arguments on Appeal Regarding Whether He
                       Violated the Fourteenth Amendment Violation and Qualified
16                     Immunity as to That Violation**

17                 **a.    Hall Can Credibly Dispute Whether He Violated the
                           Fourteenth Amendment**
18

19         Hall's arguments with respect to the Fourteenth Amendment claim also have merit.  As

20  an initial point, to the extent that Hall has valid arguments respecting the Fourth Amendment

21  claim, he has valid arguments respecting the Fourteenth Amendment claim since that claim

22  requires that Hall's use of force be more than simply unreasonable.  *See Moreland v. Las

23  Vegas Metro. Police Dep't,* 159 F.3d 365, 371 n.4 (9th Cir. 1998).  Hall can also argue on

24  appeal that the undisputed material facts do not show that he acted with a "purpose to harm,"

    the applicable standard.  His appellate arguments are not so baseless as to be frivolous.

25         In its Order, the Court denied summary judgment on this claim because Hall "cannot

26  demonstrate, at this point, that his actions had a legitimate law enforcement purpose."  ECF

27  No. 105 at 9.   The Court noted that "[i]n a case like this one where the record is hotly

28  disputed, an officer cannot combat the accusation that he acted without a legitimate law

1  enforcement purpose merely by stating the contrary." *Id.* The Court also cited deposition

2  testimony from Hall that the Civic was not "gunning to run [him] over" and that he was "able

3  to back up and get out of the path of the car and avoid being hit" as well as a statement from

4  Sergeant Martin that he was "quite concerned" about being struck by Hall's shots. *Id.*

5         On appeal, Hall will argue that Atienza has no evidence that Hall acted with a "purpose

6  to harm." This is the appropriate standard due to the fact that the incident unfolded rapidly

7  over a total of seven seconds. *See Wilkinson,* 610 F.3d at 554 (purpose to harm standard

8  applied where situation "evolved" in "a matter of seconds"); *Hayes v. Cty. of San Diego,* 736

9  F.3d 1223, 1230 (9th Cir. 2013). On the merits, Hall will cite to undisputed evidence,

10  including the video evidence, showing that Hall was in the path of the oncoming Civic and had

11  to make a split-second decision. Hall will also contend that his declaration and interview

12  statements can be considered as they are consistent with the video evidence and there is no

13  basis to doubt their veracity. In Hall's opinion, the record evidence indisputably establishes

14  that the Civic posed a risk of imminent harm to Hall. And, because Hall "was in a rapidly

15  evolving situation requiring him to make 'split-second judgments,'" he will argue that

16  deference should be shown to his "decision about how best to minimize the risk to his own

17  safety and the safety of others." *Wilkinson,* 610 F.3d at 554.

18         Even disregarding the foregoing, the Ninth Circuit could reverse based on the absence

19  of evidence showing that Hall's conduct was inconsistent with a legitimate law enforcement

20  objective. There is no direct evidence of an improper motive by Hall. And it is insufficient to

21  establish Hall's use of force was excessive under the Fourth Amendment. *Martinez v. City of*

22  *Pittsburg,* 2019 U.S. Dist. LEXIS 37904, *18 (N.D. Cal. March 8, 2019); *see also Gonzalez,*

23  747 F.3d at 797-98. Instead, there must be outrageous conduct by Hall, such as the use of

24  force on a "'a clearly harmless or subdued suspect.'" *See Wroth v. City of Rohnert Park,* 2019

25  U.S. Dist. LEXIS 68068, * 28 (N.D.Cal. April 22, 2019) (quoting *Foster v. City of Indio,* 908

26  F.3d 1204, 1211 (9th Cir. 2018)). Such a showing is not possible here because during the

27  relevant time period, Arboleda was neither harmless nor subdued but driving his Civic, a

28  potentially deadly weapon, in a dangerous and risky manner. And Hall's shots were fired in

one continuous volley such that they should be analyzed together.  *Zion v. Cty. of Orange,* 874 F.3d 1072, 1077 (9th Cir. 2017).

The deposition testimony noted by the Court is not material.  As noted above, the fact that Hall was not injured is not a basis to conclude that he could not reasonably believe himself to be in danger. Hall's admission that Arboleda was not "gunning" the Civic is equally immaterial - while a "gunned" vehicle is more threatening, a steadily approaching vehicle, even at slow speeds, is also a threat.  *See Orn,* 949 F.3d at 1174; *Robinson,* 415 F.3d at 1254. Martin's statement that he was "very concerned" about being shot is also immaterial for two reasons; it does not pertain to Hall's motive for shooting and when Hall shot, he believed that Martin was not in his vehicle at the time, i.e. not where Hall shot.  *See* ECF No. 100 at 11.

Significantly, if one of Hall's shots was proper (or subject to qualified immunity), summary judgment on this claim is appropriate because in that situation, Atienza cannot establish the element that Arboleda died as a result of an improper shot.

### b.   Hall Can Viably Assert Qualified Immunity With Respect to the Fourteenth Amendment Claim

Hall also has credible appellate arguments on the "clearly established" prong of qualified immunity as to the Fourteenth Amendment claim.  As with the Fourth Amendment claim, Atienza cannot cite to any factually similar controlling decisions that clearly establish Hall's conduct would violate the Fourteenth Amendment.  As noted above, prior decisions have focused on "clearly harmless or subdued" suspects; Arboleda was neither - he was still in possession of a deadly weapon (the Civic) and remained a threat to use it.  Consequently, even if the Ninth Circuit were to conclude that the undisputed facts did not prove that Arboleda was a deadly threat, it is likely to conclude that Hall's conduct was in the "hazy border" between acceptable force and outrageous force and, thus, qualified immunity applies.

### B.   The Court Should Stay Proceedings as to Atienza's State Law Claims

In light of the automatic stay applicable to Atienza's federal claims, this Court should stay proceedings as to her state law claims.  All of her state law claims are based on the same incident and all involve virtually the same legal analysis as the Fourth Amendment claim. Indeed, that is clear from this Court's August 4 Order.  *See* ECF No. 105 at 11-12; *see also*

1   *Hayes,* 736 F.3d at 1232.  Consequently, absent a stay of the state law claims, there may need

2   to be two trials on the same factual and legal issues, which is both inefficient and prejudicial to

3   Hall.  These factors warrant staying proceedings as to Atienza's state law claims.

4       Earlier this year, the Hawaii district court held that the automatic stay not to just the

5   federal claims, but also to state law claims "based on the same factual allegations that

6   comprise the federal claims."  *David v. Betts,* 2021 U.S. Dist. LEXIS 108276, *12 (D. Hawaii

7   June 9, 2021).  "[A]llowing Plaintiffs to proceed with their state-law claim would necessarily

8   encroach upon the (now-stayed) federal claims – it would improperly interfere with 'those

9   aspects of the case involved in the appeal.'" *Id.* (quoting *Griggs v. Provident Consumer Disc.*

10  *Co.,* 459 U.S. 56, 58 (1982)).  This logic is equally applicable to this case because, as noted by

11  the Court, the federal claims and the state law claims arise from the same set of facts and pose

12  the question of whether Hall's conduct was reasonable.  *See* ECF No. 105, at 7 n.3, 11-12.

13      Even if the automatic stay does not encompass Atienza's state law claims, which is the

14  more traditional view, the Court should stay proceedings as to the state law claims based on

15  judicial economy and the prejudice to Hall.  This Court previously addressed this same

16  situation in *Martinez,* holding that it warranted a stay of all claims, including the state law

17  claims.  The Court's reasoning and language in *Martinez* is applicable here:

18          The circumstances of this action favor a stay of all claims, not only those
            pending before the Ninth Circuit.  Declining to stay this action would mean that
19          the six defendant officers would likely have to defend two separate trials related
            to the exact same conduct.  This would clearly prejudice the defendant officers
20          and would result in a tremendous waste of judicial resources.  Furthermore,
            given the substantial overlap between the claims in this action, proceeding with
21          two separate trials could result in conflicting jury verdicts.  While it is true that
            staying this case will delay to some extent the resolution of Plaintiff's claims,
22          this interest is ultimately outweighed by the likely waste of judicial resources and
            prejudice to Defendants of trying these highly interrelated claims separately.
23          Therefore, as an exercise of discretion, the motion to stay is hereby granted.

24  *Martinez,* 2019 U.S. Dist. LEXIS 58568, at *6; *see also Hernandez v. City of San Jose,* 2017

25  U.S. Dist. LEXIS 73803, *46 (N.D. Cal. May 15, 2017) (staying state law negligence claims

26  where unless stayed, "the parties may engage in extensive discovery, motions practice and trial

27  that may be rendered moot by the Ninth Circuit's ruling on appeal").

28      In 2018, an Eastern District Court reached the same result in a case presenting the same

mix of legal claims. *Centeno v. City of Fresno,* 2018 U.S. Dist. LEXIS 41249 (E.D. Cal. March 13, 2018). "[I]t would not be a wise use of judicial resources to bifurcate trial and separately try plaintiffs' state law wrongful death claims. Those claims are based on essentially the same evidence as plaintiffs' constitutional claims. Accordingly, the court will stay the entire case pending resolution of defendants' interlocutory appeal." *Id.* at *10-11.

Hall is the only defendant and, consequently, will suffer irreparable harm absent a stay. As explained in *Castro v. Melchor,* 760 F. Supp. 2d 970 (D.Hawaii 2011), qualified immunity is an immunity to suit and, therefore, it would be irreparable harm to Hall to testify at trial on subjects within the scope of the appeal. *Id.* at 2004. Given the substantial overlap between the federal claims and state law claims, Hall will suffer irreparable harm if required to testify at trial on the state law claims before resolution of his appeal.

Atienza has no basis to dispute the appropriateness of a stay as to all proceedings. Notably, discovery is complete and all relevant memories converted into transcripts. Further, already three years have passed since the incident took place in November 2018. Hall's appeal, thus, will not result in any further significant delay, particularly as Hall's opening appellate brief is due prior to the commencement of trial.

Finally, to the extent that the Court considers Hall's likelihood of success as to his appeal, that factor is neutral here because Hall's appeal is not frivolous. *Castro,* 760 F. Supp. 2d at 1003. Further, even if this factor weighed against a stay, a stay is nonetheless appropriate in light of judicial economy and the irreparable harm to Hall absent a stay.

For reasons of judicial economy and avoidance of prejudice to Hall, the Court should stay proceedings as Atienza's state law claims.

## V.    CONCLUSION

This motion to stay should be granted and all proceedings as Atienza's state law claims, including trial, stayed pending appeal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  August 26, 2021

MARY ANN McNETT MASON
COUNTY COUNSEL


By: _____*/s/ D. Cameron Baker*_____
          D. CAMERON BAKER
          Deputy County Counsel

Attorneys for Defendant Andrew Hall