1  MARY ANN McNETT MASON (SBN 115089)
   County Counsel
2  D. CAMERON BAKER (SBN 154432)
   Deputy County Counsel
3  COUNTY OF CONTRA COSTA
4  1025 Escobar Street, Third Floor
   Martinez, California 94553
5  Telephone:  (925) 655-2280
   Facsimile:   (925) 655-2266
6  Electronic Mail: cameron.baker@cc.cccounty.us

7  Attorneys for Defendant
   ANDREW HALL
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNIE ATIENZA, individually and as successor-in-interest to Decedent LAUDEMER ARBOLEDA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW HALL, individually; PHILLIP ARBOLEDA, individually, as successor-in-interest to Decedent LAUDEMER ARBOLEDA, and DOES 1-50 inclusive,<br><br>Defendants. | No. C19-03440 RS<br><br>OPPOSITION OF DEFENDANT ANDREW HALL TO PLAINTIFF JEANNIE ATIENZA'S MOTION TO CERTIFY INTERLOCUTORY APPEAL AS FRIVOLOUS<br><br>Date:  September 30, 2021<br>Time:  1:30 p.m.<br>Crtrm: 3, 17th Floor<br>Judge: Hon. Richard Seeborg, Presiding<br>Date Action Filed: June 17, 2019<br>Trial Date:  December 6, 2021 |

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. The Ninth Circuit Has Jurisdiction to Hear Hall's Appeal . . . . . . . . . . . . . . . 2

    B. Hall Has Viable Appellate Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1. Hall Can Credibly Dispute Whether He Violated the Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2. Hall Has Viable Arguments Regarding Qualified Immunity as to the Fourth Amendment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3. Hall Can Credibly Dispute Whether He Violated the Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        4. Hall Can Viably Assert Qualified Immunity With Respect to the Fourteenth Amendment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

CASES

*Acosta v. City and County of San Francisco,* 83 F.3d 1143 (9th Cir. 1996) . . . . . . . . . . . . . 8, 9

*Apostol v. Gallion*, 870 F.2d 1335(7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Behrens v. Pelletier,* 516 U.S. 299 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

*Brousseau v. Haugen,* 543 U.S. 194 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chuman v. Wright,* 960 F.2d 104 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Collins v. Jordan,* 110 F.3d 1363 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Earl v. Campbell*, 2019 U.S. Dist LEXIS 53155 (W.D. Wa. March 28, 2019) . . . . . . . . . . . 11

*Earl v. Campbell,* 2021 U.S. App. LEXIS 16268 (9th Cir. June 1, 2021) . . . . . . . . . . . . 11, 12

*Estate of Anderson v. Marsh,* 985 F.3d 726 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Estate of Slater v. King Cnty.,* 610 Fed. Appx. 601 (9th Cir. 2015) . . . . . . . . . . . . . . . . . 5, 6, 9

*Estate of Slater v. King. Cnty.,* 2013 U.S. Dist. LEXIS 114369
(W.D. Wa. August 13, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Foster v. City of Indio,* 908 F.3d 1204 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Graham v. Connor,* 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Hayes v. Cty. of San Diego,* 736 F.3d 1223 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*J.P. v. Cty. of Alameda,* 2018 U.S. Dist. LEXIS 136651(N.D. Cal. August 13, 2018) . . . . . . . 2

*Johnson v. Jones,* 515 U.S. 304 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Latits v. Phillips,* 878 F.3d 541 (6th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Maropulos v. Cty. of Los Angeles,* 560 F.3d 974 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 3, 4

*Martinez v. City of Pittsburg,* 2019 U.S. Dist. LEXIS 37904 (N.D. Cal. March 8, 2019) . . . 13

*Martinez v. City of Pittsburg,* 2019 U.S. Dist. LEXIS 58568 (N.D. Cal. April 4, 2019) . . 2, 10

*Monzon v. City of Murrieta,* 978 F.3d 1150 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365 (9th Cir. 1998) . . . . . . . . . . . . . . 13

*Orn v. City of Tacoma,* 949 F.3d 1167 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . 8-10, 12, 14

*Robinson v. Arrugueta,* 415 F.3d 1252 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 14

*Rodriguez v. Cty. of Los Angeles,* 891 F.3d 776 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schering Corp. v. First DataBank, Inc.*, 2007 U.S. Dist. LEXIS 45813
(N.D. Cal. June 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Suzuki v. Cty. of Contra Costa,* 2019 U.S. Dist. LEXIS 166179
(N.D. Cal. September 25, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tennessee v. Garner,* 471 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Thomas v. Durastanti,* 607 F.3d 655 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 10

*Villanueva v. California,* 986 F.3d 1158 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Waterman v. Batton,* 393 F.3d 471 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7, 9, 13

*Wroth v. City of Rohnert Park,* 2019 U.S. Dist. LEXIS 68068 (N.D.Cal. April 22, 2019) . . . 13

*Zion v. Cty. of Orange,* 874 F.3d 1072 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

Plaintiff Jeannie Atienza's motion to certify Defendant Hall's interlocutory appeal as frivolous should be denied. Atienza raises only one argument in support of her motion, the jurisdictional argument that "district court orders denying qualified immunity on the basis of remaining material factual disputes are not 'final,' appealable orders." *See* Plaintiff Jeannie Atienza's Motion to Certify Defendants' [sic] Interlocutory Appeal as Frivolous, ECF No. 111 at 1, 2-3. This jurisdictional argument is meritless - both the Supreme Court and the Ninth Circuit have made clear that Hall can appeal this Court's denial of qualified immunity despite the Court's finding of material factual disputes. Further to the point, Hall's appellate arguments have merit. Accordingly, Hall's appeal is not frivolous and Atienza's motion should be denied.

## II. ISSUES TO BE DECIDED

1. Should the Court declare Hall's interlocutory appeal frivolous on the grounds that the Ninth Circuit lacks jurisdiction over his appeal?

## III. FACTUAL BACKGROUND

On June 3, 2021, Hall filed a motion for summary judgment as to all five claims in this case, asserting, *inter alia,* qualified immunity as to the federal claims. ECF No. 93 at 16-18, 19-20. On August 4, 2021, the Court denied the motion, holding, *inter alia,* that Hall was not entitled to qualified immunity with respect to the Fourth and Fourteenth Amendment claims. ECF No. 105. Based on the Court's denial of summary judgment as to the Fourth Amendment claim, the Court denied summary judgment on the Bane Act claim and the assault claim. *See id.* at 11-12. Elsewhere, the Court acknowledged the wrongful death negligence claim rests on the reasonableness of Hall's conduct. *Id.* at 11.

On August 16, 2021, Hall filed a Notice of Appeal as to the August 4 Order. ECF No. 109. The Ninth Circuit has already set a briefing schedule - Hall's opening brief is due November 24, 2021; Atienza's responsive brief is due December 27, 2021; and Hall's reply brief is due January 17, 2022.

//

Atienza now moves to certify Hall's interlocutory appeal as frivolous. This motion should be denied.

## IV. LEGAL ARGUMENT

Atienza cannot meet the "demanding" standard for certifying an appeal as frivolous. *J.P. v. Cty. of Alameda,* 2018 U.S. Dist. LEXIS 136651, *6 (N.D. Cal. August 13, 2018).

> To declare the appeal frivolous, the Court must find that it is "wholly without merit." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 n.3 (9th Cir. 2002). This means that the appeal must be "so baseless that it does not invoke appellate jurisdiction," such as when "'the disposition is so plainly correct that nothing can be said on the other side." *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989).

*Schering Corp. v. First DataBank, Inc.*, 2007 U.S. Dist. LEXIS 45813, *9 (N.D. Cal. June 18, 2007); *see also Martinez v. City of Pittsburg,* 2019 U.S. Dist. LEXIS 58568, *3 (N.D. Cal. April 4, 2019). It is Atienza's burden to meet this demanding standard. *Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir. 1990); *see also Apostol,* 870 F.3d at 1339. She has not and cannot do so. Atienza's sole argument, that the Ninth Circuit lacks jurisdiction over Hall's appeal because this Court found material factual disputes, is patently meritless. In addition to this point, as demonstrated below and in Hall's pending motion for a stay, ECF No. 112, Hall has viable arguments in support of his appeal.

### A. The Ninth Circuit Has Jurisdiction to Hear Hall's Appeal

Atienza presents only one argument in support of her motion, the jurisdictional argument that a district court's denial of qualified immunity on the basis of "material factual disputes" is not a "'final', appealable order." ECF No. 111 at 1 (citing *Johnson v. Jones,* 515 U.S. 304, 313 (1995)). This argument is patently meritless, as both the Supreme Court and the Ninth Circuit have expressly held the contrary to be true.

In *Behrens v. Pelletier,* 516 U.S. 299 (1996), the Supreme Court summarily rejected the argument that Atienza now makes, i.e. that *Johnson* precludes an interlocutory appeal of the denial of qualified immunity where the district court denied qualified immunity based on factual disputes. In that case, the Supreme Court succinctly stated:

> That is a misreading of the case. Denial of summary judgment often includes a determination that there are controverted issues of material fact, see Fed. Rule

> Civ. Proc. 56, and Johnson surely does not mean that every such denial of summary judgment is nonappealable. Johnson held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision' under Cohen and Mitchell. See 515 U.S. at 313-318.

*Id.*

The Ninth Circuit, likewise, has rejected Atienza's jurisdictional argument. "[A] denial of summary judgment on qualified grounds is not always unappealable simply because a district court judge has stated that there are material issues of fact in dispute." *Cunningham v. Gates,* 229 F.3d 1271, 1286 (9th Cir. 2000) (citing *Behrens*). To the contrary, in this situation, the Ninth Circuit expressly permits Hall to raise the following arguments in his appeal:

- Hall did not violate the amendments at issue "view[ing] the facts and draw[ing] all reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Wilkinson v. Torres,* 610 F.3d 546, 550 (9th Cir. 2010);

- Hall should be given qualified immunity "view[ing] the facts and draw[ing] all reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Id.*;

- And he can even make arguments respecting the factual record, such as a) there is no evidence in the record as to a fact, b) a disputed fact is not material, and c) the evidence in the record "clearly contradicts" the version of facts asserted by Atienza (or found by the Court). *Estate of Anderson v. Marsh,* 985 F.3d 726, 731 n.3 (9th Cir. 2021); *Cunningham,* 229 F.3d at 1286; *Collins v. Jordan,* 110 F.3d 1363, 1370 (9th Cir. 1996).

None of the three Ninth Circuit cases cited by Atienza support her jurisdictional argument. In *Maropulos v. Cty. of Los Angeles,* 560 F.3d 974 (9th Cir. 2009), the Ninth Circuit rejected an interlocutory appeal because the appeal raised only arguments about the sufficiency of the evidence. *Id.* at 975. These "sufficiency of the evidence" arguments are

clearly precluded by Johnson. *Id*. In *Rodriguez v. Cty. of Los Angeles,* 891 F.3d 776 (9th Cir. 2018), the Ninth Circuit held that it lacked jurisdiction over an interlocutory appeal that raised arguments based only on disputed facts or conclusory assertions. *Id.* at 792. And *Chuman v. Wright,* 960 F.2d 104 (9th Cir. 1992), the third case cited by Atienza, pre-dates *Johnson* and does not address this issue at all. *See id.* at 105.

Only one of the District Court orders cited by Atienza addresses this jurisdictional issue. In *Moore v. City and County of San Francisco,* Case No. 18-0634 SI, the Court held defendants' appeal frivolous on the grounds that an order denying qualified immunity based on a dispute of material fact is not "an immediately appealable order." ECF No. 129 at 2 (quoting *Maropulos,* 560 F.3d at 975). Notably, the Court in that case was not presented with the Supreme Court's decision in *Behrens* nor the Ninth Circuit's decision in *Cunningham*. *See* Defendants' Opposition to Plaintiffs' Motion to Shorten Time, ECF No. 126, at 2.

Because Plaintiff only advances this jurisdictional argument, her motion should be denied. In addition to this point, although Atienza has waived any ability to use the merits of Hall's appellate arguments as a basis to declare his appeal frivolous, as shown below, his appellate arguments have substantial merit.

**B. Hall Has Viable Appellate Arguments**

Under Ninth Circuit precedent, Hall can contend on appeal, *inter alia*: 1) the undisputed evidence, including video evidence, establishes that he did not violate the Fourth or Fourteenth Amendment; 2) any factual disputes are not material; 3) the Court failed to properly apply the legal standards; and 4) he should be given qualified immunity because viewing the facts in the light most favorable to Atienza, it was not clearly established that Hall's conduct violated either the Fourth or Fourteenth Amendment. These arguments have merit.

**1. Hall Can Credibly Dispute Whether He Violated the Fourth Amendment**

Hall has viable appellate arguments that the undisputed facts, when properly analyzed, demonstrate that he did not violate the Fourth Amendment. While the Court noted factual

disputes in its Order, Hall will contend that those factual disputes are not material and/or contrary to the evidence, i.e. unsupported by any evidence in the record.

In Hall's view, the material facts are: 1) Hall was on foot in the Civic's path of travel; 2) he was in a confined space between the two patrol vehicles; 3) the Civic continued to drive towards him; 4) the entire incident took roughly seven seconds; and 5) Hall had less than one second to evaluate the threat posed by the Civic and to react. In light of these undisputed facts, the Ninth Circuit could conclude that Hall reasonably believed he was faced with an immediate risk of being run over by the Civic.

Hall will highlight the brevity of the incident and having to make a split-second decision because in *Graham v. Connor,* 490 U.S. 386 (1989), the Supreme Court held that courts "must [] allow[] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the use of force that is necessary in a particular situation." *Id.* at 396-97. In *Estate of Slater v. King Cnty.,* 610 Fed. Appx. 601 (9th Cir. 2015), the Ninth Circuit held that it could not "overlook" *Graham's* admonition respecting "'the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving,'" when addressing a shooting situation that unfolded over 18 seconds. *Id.* at 602; *Estate of Slater v. King. Cnty.,* 2013 U.S. Dist. LEXIS 114369, *6 (W.D. Wa. August 13, 2013).

In *Slater*, the officer (Cougan) believed Slater was armed with a knife, which turned out to be incorrect. 2013 U.S. Dist. LEXIS 114369, *5-6. Although the district court held factual disputes precluded summary judgment on the grounds that Cougan did not violate the Fourth Amendment, the Ninth Circuit disagreed, holding "there are no disputes of fact that could lead to a contrary conclusion." 610 Fed. Appx. at 602.

> The atmosphere was fraught with menace as Slater rapidly approached, refused to obey commands to stop and was almost upon Cougan. In that rapidly evolving situation, it was reasonable for Cougan to fire his weapon at Slater. There are some disputed facts, but none of them are material to determining the reasonableness of Cougan's response under those stressful circumstances: for example, the fact that, as it turned out, Slater was not actually armed as he resolutely marched towards Cougan, the fact that less intrusive alternatives

might have been available, and the fact that the officers did not expressly say they would shoot if Slater did not stop advancing.

*Id.* at 602-03.

In both *Wilkinson* and *Monzon v. City of Murrieta,* 978 F.3d 1150 (9th Cir. 2020)*,* the Ninth Circuit similarly stressed the importance of the incidents occurring rapidly without time for the officers to evaluate and react. In *Wilkinson*, the Ninth Circuit discounted "Plaintiffs' sanitized version of the incident" because "this version omits the urgency of the situation. After all the record is uncontroverted that this entire episode occurred in less than nine seconds." *Id.* at 551-52. And in *Monzon*, the Ninth Circuit held*:*

> Monzon's driving endangered the officers and left them with only seconds to consider less severe alternatives. Judges and lawyers viewing an event like this in hindsight from the comfort of their armchairs are often tempted to dissect, evaluate, and second-guess the officers' actions piecemeal. That would be a serious mistake.

*Id.* at 1158.

The Fourth Circuit conducted a similar analysis in *Waterman v. Batton,* 393 F.3d 471 (4th Cir. 2005). It first noted facts supporting a reasonable belief that the officers faced an immediate threat and then facts "weighing against a conclusion that Waterman was trying to run over them." *Id.* at 477, 478. The Fourth Circuit went on:

> Of course, the critical reality here is that the officers did not have even a moment to pause and ponder these many conflicting factors. At the instant that Waterman's vehicle lurched forward, the vehicle could have reached Officers Batton and Heisey in about one second even without accelerating further, and in even less time if it had continued to accelerate. Thus, if the officers had paused for even an instant, they risked losing their last chance to defend themselves.

*Id. at 478.* "[A]lthough [the officers] could have held their fire and taken the chance that Waterman's acceleration [] was not for the purpose of committing another assault against an officer," the Fourth Amendment did not require them not to shoot. *Id.* at 479.

Other Circuits are in accord. In *Robinson v. Arrugueta,* 415 F.3d 1252 (11th Cir. 2005), the Eleventh Circuit found no Fourth Amendment violation where the officer had "at most, 2.72 seconds to react" and the vehicle at issue was moving "forward at a likely speed of around one to two miles per hour." *Id.* at 1254. And in *Thomas v. Durastanti,* 607 F.3d 655 (10th Cir. 2010), the Tenth Circuit found no Fourth Amendment violation where the officer

shot at a vehicle moving "deliberately out of the parking lot." *Id.* at 665. "Although Agent Durastanti's reasonable perceptions are what matters, he had mere seconds to react, and his actions in firing the first couple of shots were reasonable, even if mistaken." *Id.* at 666.

The factual disputes cited by the Court are not material and/or contrary to the undisputed evidence.

Whether the Civic was going 14 mph or 5 mph or "slower" is immaterial in light of the other undisputed evidence, which includes Hall's proximity to the Civic, how little time he had to make a decision, that the Civic could have suddenly accelerated and that the Civic did actually accelerate towards Hall. *See Robinson,* 415 F.3d at 1254, 1256 (the vehicle at issue was going between one and two mph); *Thomas,* 607 F.3d at 665; *Wilkinson,* 610 F.3d at 552; *Gonzalez v. City of Anaheim,* 747 F.3d 789, 796 (9th Cir. 2014) (*en banc*); *see also* Report of Alexander Jason, ECF No. 94-1 at 8 (video shows that "[t]he Honda was accelerating as it moved toward and past Deputy Hall"); Declaration of Andrew Hall, ECF No. 95, at ¶8 (Hall perceived Civic accelerating towards him).[1]

The precise direction of the front wheels of the Civic is immaterial because Hall was in the Civic's path of travel. *See, e.g.,* Report of Alexander Jason, ECF No. 94-1, Figures 11-13, 15-19 at 7, 9-10; ECF No. 108, Ex. H; and Exhibit A hereto. Even if Hall was not directly in the Civic's path, which is contrary to the video evidence, Hall still "could have been run over in about one second" if the Civic rapidly accelerated or "had turned slightly toward" him. *See Wilkinson,* 610 F.3d at 552; *Waterman,* 393 F.3d at 479.

When precisely Arboleda made the decision to turn into the corridor is immaterial[2] because Arboleda did make a sharp right hand turn into that corridor and Hall saw the Civic

---

[1] Hall is not the only individual who observed the Civic accelerate towards him. Both Deputy Muller and Sergeant Martin observed this acceleration. ECF No. 94-2 at 61:5-20 (Muller Deposition); ECF No. 94-3 at 37:22-38:2, 39:16-19 (Muller testimony at Coroner's Inquest); ECF No. 94-6 at 62:15-17 (Martin Deposition).

[2] Even assuming that when Arboleda made this decision is material, the video evidence resolves any possible dispute, showing when Martin parked his SUV and when Arboleda started to make the turn.

making that sharp right turn into the corridor. As indicated in *Waterman,* Hall could reasonably interpret that turn as an aggressive act on Arboleda's part, particularly when the Civic accelerated forward despite Hall standing in front of it with his gun drawn.

Finally, the Court's observation that "[w]hile it is of course possible that Officer Hall's shot changed the Honda's course, it appears Officer Hall, like the officer in *Orn* [*v. City of Tacoma,* 949 F.3d 1167 (9th Cir. 2020)], could have defused the immediacy of the threat simply by stepping back" is immaterial. It is immaterial because the video evidence establishes that the Civic did, in fact, alter course after Hall fired his first shot. This alteration in direction is evident in the change in the direction of the Civic's front wheels from 5.205 seconds to 6.073 seconds after the start of the incident. *See* Expert Report of Alexander Jason, ECF No. 94-1, insets in Figures 19 and 20, at 12. It is undisputed that Hall fired his first shot at 5.072 seconds. *Id.* at 8.

In addition to this point, whether Hall "could have stepped out of the way" is immaterial for other reasons. The reasonableness of Hall's use of force does not focus on whether Hall was in actual immediate danger, but whether he had a reasonable basis to believe that he was in immediate danger. *Monzon,* 978 F.3d at 1157; *see also Thomas,* 607 F.3d at 666 (officer can act reasonably even if mistaken about the threat). In a similar situation, the Tenth Circuit in *Thomas* expressly held the ability to step back was immaterial because the officer does not always need to use the least restrictive means as long as the officer's conduct is reasonable. 607 F.3d at 665.

While the holding in *Thomas* can be read to conflict with the Ninth Circuit's holdings in *Orn* and *Acosta v. City and County of San Francisco,* 83 F.3d 1143 (9th Cir. 1996)*,* Hall believes this reading of *Thomas* overlooks the material differences in the officers' positions and the limited time Hall had to assess and react, and the Ninth Circuit's use of an "any risk" standard in *Orn* and *Acosta.*

//

//

//

In *Orn*, the Ninth Circuit held that the officer (Clark), who was positioned behind the right rear bumper of his SUV,[3] "could [] have avoided **any risk** of being struck simply by taking a step back" - a "common-sense conclusion" - because with that step back, Clark was fully shielded by the SUV and entirely out of the Montero's path of travel, even if it suddenly accelerated or tried to swerve in his direction. 949 F.3d at 1175 (emphasis added). *Acosta* used the same "any risk" standard. 83 F.3d at 1146-47. Notably, the lack of time to evaluate the risk was not an issue in *Orn* or *Acosta*.

The undisputed facts in this case establish that Hall could not avoid "any risk" simply by stepping back. When Hall first observed the Civic, he was rounding the right rear corner of his patrol vehicle and moving into the corridor between his patrol vehicle and Martin's patrol vehicle, i.e. into the Civic's path of travel. ECF No. 95, at ¶¶8-9. His forward momentum was such that he was initially unable to stop, much less take a step back. *Id.,* ¶9. At this point, with the Civic right in front of him and still proceeding forward, Hall had to make an immediate decision whether to shoot.

And despite the Civic's change of direction and Hall's efforts to evade the Civic, he almost was hit. As reflected in a still image presented during oral argument, the Civic's front right wheel was within inches of running over Hall's right foot. *See* ECF No. 108, Exhibit J. Given the nearness of the Civic's wheel to Hall's foot, it cannot be disputed that Hall would have been hit if Arboleda had "gunned" it or swerved to hit Hall. In this situation, it is impermissible hindsight to use the fact that Hall ultimately was not hit to assert he did not have a reasonable belief of being hit. *Graham,* 490 U.S. at 396; *Wilkinson,* 610 F.3d at 1158. "Even if in hindsight the facts show that [the officer] perhaps could have escaped unharmed, we conclude that a reasonable officer could have perceived [the suspect] was using the Escort as a deadly weapon." *Robinson,* 415 F.3d at 1256; *see also Estate of Slater,* 610 Fed. Appx. at 603 (immaterial that Slater was not actually armed).

//

---

[3] According to Orn, Clark was not in that position, but on a nearby grassy knoll. 949 F.3d at 1172. Given this factual dispute, the portions of *Orn* cited in this brief and the Court's Order are dicta.

In sum, in Hall's position with no obvious means of easily evading the Civic and so little time to assess, a reasonable officer could believe that "taking a step back" would not end the risk of being struck, much less "any risk of being struck."

Finally, as a corollary argument, Hall will contend on appeal that because Arboleda drove the Civic at Hall, under *Tenn. v. Garner,* 471 U.S. 1 (1985), and its progeny, Hall was entitled to continue to use deadly force even after he himself was no longer in danger. In *Orn,* the Ninth Circuit acknowledged an officer may use deadly force where a motorist's prior interactions with police demonstrate that 'he either was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior that threatened the lives of all those around.'" 949 F.3d at 1177 (quoting *Latits v. Phillips,* 878 F.3d 541, 548 (6th Cir. 2017)); *see also Thomas,* 607 F.3d at 666-67 (discussing this issue). The video evidence is objective evidence that Arboleda "was willing to injure an officer [Hall] that got in the way of escape."[4] Further to the point, it is undisputed that the incident took place very close to downtown Danville, which would have been busy on a Saturday morning. *See* Deposition of Christopher Martin, ECF No. 94-6, at 13:25-14:15, 36:20-37:3.

In light of the foregoing, it cannot be said that Hall's appeal with respect to the Fourth Amendment claim is baseless or devoid of merit.

**2. Hall Has Viable Arguments Regarding Qualified Immunity as to the Fourth Amendment Claim**

In addition, Hall has viable arguments respecting the "clearly established" prong of qualified immunity, which is an independent basis for denying this motion.[5] Notably, it is not enough for Atienza to show that it is "unlikely" Hall will prevail on this prong or that the Court believes its ruling to be correct. *Martinez,* 2019 U.S. Dist. LEXIS 58568, at *5; *see also Suzuki v. Cty. of Contra Costa,* 2019 U.S. Dist. LEXIS 166179 (N.D. Cal. September 25, 2019). On appeal, while Hall believes that his citation of *Wilkinson* and *Monzon* suffices on

---

[4] Hall does not predicate his *Garner* argument on the Civic "speeding."

[5] The Court declined to perform the qualified immunity analysis because "the parties actively disagree about what occurred." ECF No. 105, at 10. Hall contends that any factual disputes are not material and, thus, even if resolved in Atienza's favor, Hall should be given qualified immunity.

the "clearly established" prong, his position on this prong is now much stronger as recently Hall learned of the Ninth Circuit's recent decision in *Earl v. Campbell,* 2021 U.S. App. LEXIS 16268 (9th Cir. June 1, 2021), and the decisions from the other Circuits cited above.

In *Earl,* both the District Court and the Ninth Circuit granted qualified immunity to the officer at issue (Campbell) where "the vehicle accelerated and the wheels turned toward him while he was in the path of the vehicle." *Earl v. Campbell,* 2019 U.S. Dist LEXIS 53155, *19-20 (W.D. Wa. March 28, 2019); 2021 U.S. App. LEXIS 16268, *3. Although Plaintiffs in that case contended that Campbell was never in danger and presented expert testimony showing Campbell had at least two feet of clearance, the District Court nonetheless held that qualified immunity applied:

> Plaintiffs fail to consider the gravity of the situation in which an officer is exiting the path of a vehicle that has just turned toward him. Moreover, [their expert's] analysis relied on Campbell making the split-second calculation that he has technically exited the turning arc of the vehicle, removing himself from an actual threat of immediate danger. Contrary to Plaintiff's position, this is the type of rapidly evolving, tense situation in which officers are afforded qualified immunity.

*Id.* at *20.

On appeal, the Ninth Circuit affirmed the grant of qualified immunity. In words applicable to this case, the Ninth Circuit wrote:

> Salyers argues that in 2016, clearly established law prohibited shooting the driver of a slow-moving car that Officer Campbell could have side-stepped. To the contrary, even a slow-moving car not pointed directly at an officer can pose a threat justifying deadly force. . . . Even if the officers were "out of harm's way" in hindsight, 'the critical inquiry is what [the shooting officer perceived" at the time. Officer Campbell believed he was imminent danger when Salyers, ignoring police commands, turned the car's wheels toward him and accelerated in close quarters. In such circumstances, the reasonableness of deadly force is not beyond debate.

2021 U.S. App. LEXIS 16268, *3 (citations omitted). "[N]o controlling authority has placed deadly force off limits where an officer on foot perceives a car *accelerating in his direction -*
//

which is what Officer Campbell saw here."[6] *Id. a*t *4 (italics in original). As noted above, Hall was on foot and observed the Civic accelerate towards him.

The Ninth Circuit in *Earl* went on hold the officer was entitled to qualified immunity even if he continued to shoot after he was no longer in danger. In that case, the officer fired eight shots "[i]n about two seconds . . . in a single series without pause." *Id.* at *4-5. "Cases where an officer shoots, pauses, and shoots again are distinguishable because the officer had time to assess whether the threat had subsided." *Id.* at *5.

Even if one were to disregard *Earl* and the other cases cited by Hall, Atienza has not and cannot point to any prior Supreme Court or Ninth Circuit decisions holding that an officer violated the Fourth Amendment when the officer was on foot in the open in the path of an oncoming vehicle with one second to decide whether to use deadly force. Certainly, neither *Orn* and *Villanueva v. California,* 986 F.3d 1158, 1170 (9th Cir. 2021), which Atienza previously cited, are contrary controlling decisions. *See* ECF No. 100 at 17. *Villanueva* post-dates the incident and, thus, cannot support plaintiff's position on the "clearly established" prong. And, as noted above and in *Earl, Orn* is factually distinguishable. *See supra* at 8-9. In addition, *Orn* actually supports Hall - a reasonable officer in Hall's situation could conclude under *Orn* that it was reasonable to shoot because "[a] moving vehicle can of course pose a threat of serious physical harm [] if someone is at risk of being struck by it." 949 F.3d at 1174.

Finally, at the very least, Hall can credibly contend that his conduct falls in the "hazy border between excessive and acceptable force." *Brousseau v. Haugen,* 543 U.S. 194, 201 (2004). This argument applies to all of his initial shots, including shots fired after he himself was no longer in immediate danger.

These arguments respecting qualified immunity are an independent basis to hold that Hall's appeal is not frivolous with respect to the Fourth Amendment claim.

//

---

[6] The Ninth Circuit cited *Orn* for the proposition that, because the "officer deliberately approache[d] a car traveling away from him," it was questionable "whether he could reasonably perceive a threat to his safety." *Id.* (treating *Orn* as a "similar, but non-controlling" case).

### 3. Hall Can Credibly Dispute Whether He Violated the Fourteenth Amendment

Hall's appellate arguments with respect to the Fourteenth Amendment claim, likewise, have merit. As an initial point, because Hall has valid arguments respecting the Fourth Amendment claim, he has valid arguments respecting the Fourteenth Amendment claim. *See Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 371 n.4 (9th Cir. 1998). Additionally, Hall can argue on appeal that the undisputed material facts do not show that he acted with a "purpose to harm," the applicable standard. These appellate arguments are not so baseless as to be frivolous.

On appeal, Hall can argue that Atienza has no evidence that Hall acted with a "purpose to harm," which is the appropriate standard considering the incident at issue took a total of seven seconds. *See Wilkinson,* 610 F.3d at 554 (purpose-to-harm standard applied where situation "evolved" in "a matter of seconds"); *Hayes v. Cty. of San Diego,* 736 F.3d 1223, 1230 (9th Cir. 2013). Hall can cite to the undisputed evidence showing Hall was in the path of the oncoming Civic and had to make a split-second decision. Notably, Hall's declaration and interview statements can and must be considered as they are consistent with the video evidence and there is no basis to doubt their veracity. In sum, because Hall "'was in a rapidly evolving situation requiring him to make 'split-second judgments,'" he will argue that deference should be shown to his "decision about how best to minimize the risk to his own safety and the safety of others." *Wilkinson,* 610 F.3d at 554.

In addition, the Ninth Circuit could reverse based on the absence of any evidence showing that Hall's conduct was inconsistent with a legitimate law enforcement objective. Atienza must do more than establish Hall's use of force was excessive under the Fourth Amendment. *Martinez v. City of Pittsburg,* 2019 U.S. Dist. LEXIS 37904, *18 (N.D. Cal. March 8, 2019); *see also Gonzalez,* 747 F.3d at 797-98. Instead, there must be outrageous conduct by Hall, such as the use of force on a "'a clearly harmless or subdued suspect.'" *See Wroth v. City of Rohnert Park,* 2019 U.S. Dist. LEXIS 68068, * 28 (N.D.Cal. April 22, 2019) (quoting *Foster v. City of Indio,* 908 F.3d 1204, 1211 (9th Cir. 2018)). Such a showing is not

possible here because during the relevant time period, Arboleda was neither harmless nor subdued but driving his Civic, a potentially deadly weapon, in a dangerous and risky manner. And Hall's shots were fired in one continuous volley such that they should be analyzed together. *Zion v. Cty. of Orange,* 874 F.3d 1072, 1077 (9th Cir. 2017).

In light of the foregoing, the deposition testimony noted by the Court is not material. As noted above, the fact that Hall was not injured is not a basis to conclude that he could not reasonably believe himself to be in danger. Hall's admission that Arboleda was not "gunning" the Civic is equally immaterial - while a "gunned" vehicle is certainly more threatening, a steadily approaching vehicle, even at slow speeds, is also a threat to an officer trapped in a confined space. *See Orn,* 949 F.3d at 1174; *Robinson,* 415 F.3d at 1254. And Martin's statement that he was "very concerned" about being shot is also immaterial; it does not pertain to Hall's motive for shooting **and** when Hall shot, he believed that Martin was not in his vehicle at the time, i.e. not where Hall shot. *See* ECF No. 100 at 11.

Finally, it should be noted that, if any of Hall's shots are proper under the Fourth Amendment (or subject to qualified immunity), summary judgment on this claim is appropriate because this would preclude Atienza from establishing that Arboleda died as a result of an improper shot.

### 4. Hall Can Viably Assert Qualified Immunity With Respect to the Fourteenth Amendment Claim

Hall also has credible appellate arguments on the "clearly established" prong of qualified immunity as to the Fourteenth Amendment claim. Simply put, there are no prior controlling decisions that clearly establish Hall's conduct would violate the Fourteenth Amendment. As noted above, prior decisions have focused on "clearly harmless or subdued" suspects; Arboleda was neither - he was still in possession of a deadly weapon (the Civic) and remained a threat to use it. Even if the Ninth Circuit was to conclude that the undisputed facts did not prove that Arboleda was a deadly threat to Hall, it could conclude that Hall's use of force was in the "hazy border" between acceptable force and outrageous force and, thus, qualified immunity applies.

## V. CONCLUSION

This motion to declare Hall's appeal frivolous should be denied. Contrary to Atienza's moving papers, the Ninth Circuit has jurisdiction to decide Hall's appeal notwithstanding this Court's determination that summary judgment was precluded due to material factual disputes. Further, for the reasons stated above, Hall's appellate arguments have merit.

DATED: September 7, 2021

MARY ANN McNETT MASON
COUNTY COUNSEL

By:    */s/ D. Cameron Baker*
      D. CAMERON BAKER
      Deputy County Counsel

Attorneys for Defendant Andrew Hall